GLARA E. JACOB, BY HER NEXT FRIEND, v. THE FLINT & PERE MARQUETTE RAILROAD COMPANY.

*Negligence—Alighting from moving train.*

This case falls within the rule laid down in *Railway Co. v. Bangs,* 47 Mich. 470, and *Werbowlsky v. Railway Co.,* 86 Id. 236; and the court should take judicial notice that an ordinarily prudent person would nót have attempted to alight from the train as plaintiff did, after it had passed the station, and was running at a speed of four miles an hour.

Error to Tuscola. (Beach, J.) Argued January 8, 1895. Decided May 28, 1895.

Negligence case. Plaintiff brings error. Affirmed. The facts are stated in the opinion.

*Black & Dodge,* for appellant.

*Hanchett & Hanchett,* for defendant.

HOOKER, J. The plaintiff was injured by alighting or being thrown from the defendant's passenger coach, and appeals from a judgment against her, upon a verdict by direction of the court. She was a young woman of 18 years, and, according to her testimony, she asked the brakeman, when he passed her, after calling Juniata, a station six miles from Vassar, if he called Vassar station, to which he answered: "No; the next stop is Vassar. Get your things ready." He soon after came through the car again, and called, "Vassar; change cars for

Caro!" She said that she got up and followed him out, expecting him to help her off. The train had stopped before the brakeman called, "Vassar; change cars for Caro!" She did not notice the train moving until she got on the platform. She says that the brakeman stood upon the platform all of the time she was looking, but that she did not speak to him, nor did he speak to her. Her testimony shows that she supposed she had been carried by the station, and she looked for a convenient place to get off, to prevent being carried by; and that, had she seen a place where she thought she could get off, she "would have tried to get off in some way." This was in answer to the question, "Then, if you saw a place where you thought you could get off, you intended to jump?" Again she said, "I was looking to see if I could make an effort to get off the train." On redirect she said she thought that she had been carried by, and was looking for a place to get off; that she expected to get off beyond the station, but only if there was a place to get off; adding: "I was looking for the station. I did not know that I had been carried by. I thought I had." There was nothing to indicate that she thought she was getting off at the station, and she says that the speed of the train was increasing. She did not remember going down one or more steps, and thought she did not step off the train, but repeatedly said that she could not remember and did not know whether she did or not.

A passenger named Cowing said that the lady passed out just as the brakeman shut the door after passing into the car in front. He said:

"He had no sooner shut the second door into the next car, until the lady passed out. She dashed off. The next I saw it appeared to be where she bounded back from the fence there. It looked just like a ball of clothes thrown against the fence and bound back. I supposed it was the same girl, from her running out and getting off there. She just rushed right out. She hesitated a little when she got to the door, and she stepped outside of the car. I thought she and the brakeman were not on

the platform together. Did not see him there at that time."

Another witness testified that the fence was about three feet from the rails, and sloped back; could not say whether there was room for a person to pass between the fence and a train; a person on the lower step would be from $1\frac{1}{2}$ to 2 feet clear of the fence going past. It should be remarked that this fence was at right angles to the track at a cattle guard, by which she sat when found.

Clara Hardy, a passenger, saw her go out and walk right down the step while the cars were going; saw her stepping down; did not see her step off.

A Mr. Lloyd followed her out, and saw her go down the step, and step off the car. He was right behind her on the platform, probably two steps from her. On cross-examination he was asked, "Can you say that she fell off or stepped off?" Answer: "To me, she just deliberately stepped off, right before my eyes. That is the way it appeared." The witness at once notified the brakeman, and the train was stopped. The cause of the previous stop was a railroad crossing, a short distance from Vassar, which place the train had not reached.

This embodies the substance of all the testimony upon the subject of her getting off the train. The theory that she was thrown off, if to be accepted, must be based upon the following statements, viz.:

1. That she was on the platform, looking for a convenient place to alight.
2. That she thought she did not jump.
3. That it looked to a passenger like a bundle of rags hurled or thrown against the fence.

The last is as consistent with a step or a jump from the train as it is with her being thrown from the train; the first is not inconsistent with the statement that she stepped off; while the second is an opinion merely, which her own testimony shows not to have been based upon knowledge or recollection. Having said that she neither recollected nor knew how she got off, there was no pro-

priety in allowing her to give an opinion. Hence we must conclude that she stepped off the car, to avoid being carried by her station, at a cattle guard, when the train was going three or four miles an hour at the least. She states that it was so dark that she could not see, and there is probably room to say that she acted impulsively, believing that she was being carried beyond her destination. Do these facts constitute contributory negligence? If there had been no announcement, and she had done this, there would have been little chance to claim that she was not negligent. Had a passenger said, "You had better get out here quickly, or you will be carried by," and she had gone to the platform, to find the cars moving, she would have been as likely to act impulsively as under these circumstances. The only difference would be that in such case her sudden excitement would have been caused by a third person, while in this instance it is said to have been caused by the negligent act of the brakeman. In other words, it is not to be called contributory negligence, because the defendant's act caused an impulse to do that which was negligent; in other words, caused negligence upon her part. Such a claim as that might be urged in many cases of negligence. But the true test is "the conduct of an ordinarily prudent person." It will not be presumed that an 18 year old girl, traveling alone, who has traveled on cars before over the same road, who expects the brakeman to help her alight, and is surprised that he does not, is such a novice as to be relieved from the ordinary rules of contributory negligence. She may be presumed to be as mature intellectually as a man of 21. In some states it is the age of majority. Railway passengers are presumed to know the every-day incidents of railroad travel. *Mitchell v. Railway Co.*, 51 Mich. 236; *Minock v. Railway Co.*, 97 Id. 425. It certainly would be imprudent for a person to step into a cattle guard, in daylight, from a train in motion, though going but three or four miles an hour,

and more imprudent to do so where it is so dark that the cattle guard cannot be seen.

It is unnecessary to review the cases from other states, cited by counsel for the respective parties, inasmuch as our own authorities are decisive. In *Lake Shore & M. S. Ry. Co. v. Bangs*, 47 Mich. 470, the plaintiff, knowing that he was being carried by his station, jumped from the lower step of the coach while it was going at the rate of six miles an hour. Mr. Justice CAMPBELL, speaking for the Court, said:

"We have reluctantly felt ourselves compelled to hold that, in our judgment, such conduct is beyond any question negligence, and that the jury should have been so instructed. The fact that many persons take the risk of leaving cars in motion does not make them any the less risks which they have no right to lay at the door of the railroad companies. No company can use effectively coercive powers to keep passengers from doing such things. All persons of sound mind must be held responsible for knowledge of the usual risks of such traveling. Everyone is supposed to know that a fall beside a moving train is very likely to bring some part of the body or limbs in danger of being crushed. Every one is supposed to know that in jumping from a vehicle running six miles an hour, *or much less*, he stands a good many chances of falling or being unable to fully control his movements, and that falling near a train is always dangerous. No doubt every one who tries such an experiment persuades himself that he will escape, but it is impossible to suppose any one of common sense does not know that there is danger."

*Mitchell v. Railway Co.*, 51 Mich. 236, arose over an accident somewhat similar, but the question of contributory negligence did not arise. It turned on the absence of negligence.

In *Werbowlsky v. Railway Co.*, 86 Mich. 236, 239, Mr. Justice McGRATH said:

"A passenger who voluntarily jumps on or off from a car while it is in motion does so at his own peril, and that

construction cannot be said to be defective which is only unsafe in view of such conduct."

An attempt is made to distinguish these cases from the one before us, it being contended that the negligence of the defendant put the plaintiff in a position where she was called upon to act suddenly, and where, under such circumstances, she yields to an impulse, and is injured, she may recover, and, at all events, it is a question for the jury. Two Michigan cases are relied on, to support this doctrine: *McCaslin v. Railway Co.*, 93 Mich. 553; *Cousins v. Railway Co.*, 96 Id. 386. Both are distinguishable in important particulars. In the first of these the train stopped at the station. The plaintiff, a woman, followed two companions off the train. They alighted in safety, when the conductor gave the signal to start. As she went to step off, with the assistance of the brakeman, as she stepped upon the ground, she fell, and was hurt. The opinion says:

"The fall was unquestionably caused by the motion of the train, although the brakeman may have been negligent in assisting her."

Either would have been the negligence of the defendant. She felt the motion of the train at the head of the stairs, and the fact most in dispute was whether the brakeman invited her to alight. The Court said that it was for the jury to say whether she was guilty of contributory negligence. Mr. Justice GRANT said:

"The main question in the case is, was plaintiff guilty of negligence in alighting from the train, under the circumstances, when it was in motion? Defendant's counsel insist that the court should have directed a verdict for it, because plaintiff passed out of the car, down the steps, and alighted, when she knew that the train was moving. The learned counsel in this proposition leave out entirely the facts that the train was moving slowly; that she had been invited to alight; that the brakeman stood there to assist, and did assist, her to alight; and that he suddenly let go her hand, and swung himself upon the departing train.

"The authorities are quite uniform that jumping from a moving train before it has reached the station, and boarding a train while in motion, are presumptively negligent acts, and in many cases are negligent *per se;* so, also, is the act of jumping from a train which is running past the station where the passenger desires to stop. [Authorities cited.] But it is not negligent *per se* for a passenger to alight from a train after it has stopped and he has been invited to alight, and, while doing so, the train is again started, and especially when the brakeman or conductor is standing upon the ground inviting and assisting him, unless the speed of the train was such that the danger is obvious. This proposition is based upon sound reason and good sense. It is sustained by the clear weight of authorities, which it is unnecessary here to recite."

The case of *Cousins v. Railway Co.* carefully limits the rule, and goes to the extent merely of holding that,—

"If one is, by the wrongful act of the carrier, placed in a position where, under a sudden impulse to save himself from serious inconvenience, he attempts to alight from a moving train, where the danger is not imminent, and where persons of ordinary care and caution would make the attempt, it is not *necessarily* negligent."

Both of these were cases where the train was barely under motion, and the action was impulsive. They were at regular stations, in the day-time, where there was a suitable place to alight, and where there might be a question whether prudent persons would not do the same under like circumstances. In this case the plaintiff's impulse, if it can be called sudden, when she had noticed the increasing velocity, caused her to take the hazard of alighting in the dark in an unknown place. In my opinion, this case falls within the rule of the cases first cited, and we should take judicial notice that an ordinarily prudent person would not have made the attempt. Shear. & R. Neg. § 520, and cases cited.

I think the judgment should be affirmed.

Long and Grant, JJ., concurred with Hooker, J.

McGRATH, C. J. (*dissenting*). Plaintiff, at the age of 18 years, took one of defendant's trains at Port Huron for Vassar. After the train had left Juniata, a station six miles east of Vassar, she asked the brakeman if he had called Vassar. He replied that he had not, but said: "The next stop is Vassar. Get your things ready." Vassar station is at the junction of the F. & P. M. Ry. and the D. & B. C. Ry. The crossing is about 100 feet east of the depot building. Plaintiff was run over at a cattle guard about 300 feet east of the crossing. The testimony is undisputed that the train came to a full stop at a point east of the crossing and cattle guard. The engineer testified that he stopped about 700 feet east of the crossing; that the semaphore was against him that night; that he stopped, and called for it; that he waited for it, and that he got the semaphore as soon as the man could come to it. Plaintiff testified that after the train had come to a full stop the brakeman called out in the car, "Vassar; change cars for Caro!" and immediately passed out of the car upon the platform: that she, being in readiness, as suggested by the brakeman at Juniata, got up at once, and followed the brakeman out upon the platform; that, "when I got onto the platform, I found that the train was moving, and he was making no effort to help me off, and so I was anxious to get home; I wanted to see my people; I had been gone a long while; and I began to look, to see where I was going to get off; and I could not see any station or any place to get off; and the train kept moving faster, and the moving of the train threw me off." The plaintiff was subjected to a lengthy cross-examination, upon which she testified as follows:

"*Q.* Did you step down the step?

"*A.* I don't remember stepping down the step.

"*Q.* Do you know whether you did step down the step or not?

"*A.* No, sir.

"*Q.* You can't tell?

"*A.* No, sir.

"*Q.* Do you know how you came to get off?

"*A.* No, sir; I don't know just how I got off.

"*Q.* You don't know whether you jumped off or fell off?

"*A.* No, sir. I think I fell off. The moving of the train threw me off. That is what I think threw me off.

"*Q.* I ask you whether you can tell whether that was it or not?

"*A.* No, sir.

"*Q.* You may have jumped off?

"*A.* I don't think so. I don't think I jumped off.

"*Q.* You may, as far as you know?

"*A.* Yes, I may have jumped off; but I don't remember.

"*Q.* You don't remember whether you did or not?

"*A.* No, sir.

"*Q.* If you were standing in the middle of the platform, right in front of the car door, you could not have fallen off, could you?

"*A.* I was not in front of the car door. I bent forward from there, to see if I could see that station.

"*Q.* Did you go onto the platform of the other car?

"*A.* No, sir.

"*Q.* You bent forward?

"*A.* Yes.

"*Q.* You bent forward to look at the outside?

"*A.* Yes.

"*Q.* Did you step down?

"*A.* Not that I remember of.

"*Q.* You don't remember whether you did or not?

"*A.* No, sir.   *   *   *

"*Q.* You thought you were being carried by the station?

"*A.* Yes.

"*Q.* And you were anxious to get home?

"*A.* Yes.

"*Q.* On that account, didn't you make an effort to get off the train?

"*A.* I was looking to see if I could make an effort to get off the train.

"*Q.* Now, don't you know that you stepped or jumped to get off?

"*A.* No, sir; not that I remember of.

"*Q.* You couldn't say whether you did or not?

"*A.* No, sir.

"*Q.* You don't know whether you stepped down on the step?

"*A.* No, sir; I don't remember of it.    *    *,    *

"*Q.* Did you look to the east towards the station—I mean to the west?

"*A.* I looked both ways.

"*Q.* And could see nothing?

"*A.* Yes.

"*Q.* All that you can say is that while you were looking you got off the car either by jumping or falling?'

"*A.* Yes.    *    *    *"

On redirect examination the witness said:

"*Q.* Now, Mr. Hanchett asked you if you could tell whether you got off the train by being thrown off or by jumping off, and you could not tell. Now, why can't you tell?

"*A.* Because I don't remember. All that I remember is of getting off. I don't remember jumping. I think I must have been thrown off.

"*Q.* What condition was your mind in at that time?

"*A.* Well, I was very anxious to get home, and I thought I had been carried by, and I was looking for some place to get off.

"*Q.* How did that affect you?

"*A.* It made me very uneasy and nervous, and I looked, and couldn't find any place to get off, and I kept looking forward.

"*Q.* What is the reason you can't remember about it?

"*A.* I don't know, unless it was because I was so excited.

"*Q.* Excited from what?

"*A.* Because I thought I was being carried by."

On re-cross-examination she said:

"*Q.* I understand that you were looking for a place to get off?

"*A.* I was looking for the station, expecting to get off at that place.

"*Q.* You say you thought you were being carried by?

"*A.* Yes.

"*Q.* You were looking for a convenient spot to get off, to prevent your being carried by?

"*A.* Yes.

"*Q*. Then, if you saw a place where you thought you could get off, you intended to jump?

"*A*. I would have tried to get off in some way.

"*Q*. Now, wasn't that just what you did when you did get off?

"*A*. No, sir; I was looking for a place so I could get off.

"*Q*. But I understand you say you can't tell whether you jumped off or not?

"*A*. No, sir; I don't think I did.

"*Q*. You know that if you had seen a place where you thought you could get off, you would have tried to get off?

"*A*. That is what I think.

"*Q*. You thought you had passed the station?

"*A*. Yes.

"*Q*. And you were looking for a place to get off?

"*A*. I was looking to see if there was any place to get off.

"*Q*. And you intended to get off if there was such a place?

"*A*. Well, I suppose that is what I thought at that time."

The court directed a verdict for defendant, and it is contended (1) that defendant was not guilty of negligence, and (2) that plaintiff was guilty of contributory negligence in remaining upon the platform, or going down upon the steps, or attempting to alight while the car was in motion.

The case must be considered as though plaintiff's testimony were undisputed. Plaintiff had been informed not only that "the next stop is Vassar," but when the train stopped she was informed that the train had arrived at Vassar station. In *Lake Shore & M. S. Ry. Co. v. Bangs*, 47 Mich. 470, plaintiff was a man of mature years There was no sudden starting of the cars while plaintiff was upon the platform. The train had stopped within the city limits, and a number of passengers had alighted. No intimation had been given that the train would stop again, and it did not; but some time after it had started, and while running at a high rate of

speed, plaintiff deliberately walked out upon the platform, took the risk, and jumped from the platform. There was an entire absence of any invitation to alight at or near that point, or to get ready to alight, or to take the platform. The train had not even slacked its speed with reference to plaintiff's departure, and plaintiff did not expect it to slacken its speed or stop.

In *Minock v. Railway Co.*, 97 Mich. 425, plaintiff's destination was Holly. The brakeman had announced that the next station would be Holly. Before reaching Holly, the train stopped at a crossing, and plaintiff, supposing that the train was at Holly, alighted. The Court held that, after such an announcement, defendant was not under obligations to notify its passengers not to alight at an intervening railway crossing. The defendant, say the Court, has a right to expect that its passengers will sit in the cars until stations are called. The brakeman had not, in that case, announced that the next stop would be Holly; nor, after the train had stopped, had he informed the plaintiff that she had arrived at Holly. Had there been no announcement after the train had stopped for the crossing, the case here would still be distinguishable from the Minock case.

The books are full of cases where passengers have rushed to the platform of a moving train upon a station announcement. This has uniformly been held inexcusable. In such case the statute requires such announcement to be made, and the performance of a statutory duty cannot subject the company to a charge of negligence. But, ordinarily, passengers would regard the announcement of the station after the train had come to a stop as an invitation to passengers for that station to alight. The surroundings may be such, when they can be observed, as to suggest to the passenger that the station has not yet been reached; but such a case is not here. The law certainly does not require a railroad company to mislead its passengers, nor is it excusable for so doing. This is not a case where the company had done simply

what the law required it to do in announcing a station before it had reached it, and was therefore not bound to assume that passengers in response to such an announcement would undertake to leave the train while in motion, but the company had done more,—it had, after the train had stopped, informed the passenger that the station had been reached.

The question of contributory negligence was one for the jury. Her testimony clearly tends to show that she was upon the platform by invitation, and that what she did was done in the presence of the brakeman. Under such circumstances it cannot be said, as a matter of law, that she was negligent for going upon the platform or upon the steps; nor am I prepared to say that her testimony warrants the conclusion that she was not thrown from the train, nor can such conclusion be justified by a consideration of the defendant's testimony.

The judgment should be reversed.

MONTGOMERY, J., concurred with McGRATH, C. J.