FOLEY *v.* DETROIT & MACKINAC RAILWAY CO.

1. CARRIERS—PERSONAL INJURIES—BOARDING TRAIN—CONTRIBUTORY NEGLIGENCE.

Where plaintiff claimed that he alighted from defendant's train at the wrong station because the brakeman, who called the stations, incorrectly informed him that the next stop was his destination, and that plaintiff, having alighted and discovered his mistake, started to board the train again, and that it started as he did so and plaintiff fell and received serious injuries, it was a question for the jury whether plaintiff was guilty of negligence in

getting on a moving train, as the defendant's testimony
tended to establish.

2. TRIAL—DIRECTED VERDICT—APPEAL AND ERROR.
   In determining whether a defendant is entitled to a di-
   rected verdict, plaintiff's evidence is to be taken as true
   and considered in the light most favorable to him.

3. CARRIERS—PASSENGERS—INSTRUCTIONS.
   It was improper, however, to instruct the jury that if the
   passenger was induced to leave the train by the erroneous
   information given to him, that would relieve plaintiff of
   the duty to board the train again with the same prompti-
   tude as other passengers are required to exercise, and
   that the jury might consider the same point in determin-
   ing the care or negligence of the train crew.

4. SAME—NEGLIGENCE—PROXIMATE CAUSE.
   The alleged negligence of defendant's employee in misin-
   forming plaintiff as to the name of the station was a dis-
   tinct, actionable wrong independent of the claimed wrong
   or negligence of defendant in starting the train while
   plaintiff was getting back on, and the court should not
   have permitted the jury to consider the mistake or mis-
   information as the proximate cause of plaintiff's injuries.

5. SAME.
   Defendant was chargeable with the same degree of care
   towards plaintiff as it owed to other passengers who were
   about to board its train.

Error to Arenac; Sharpe, J.    Submitted January
16, 1914.    (Docket No. 37.)    Decided March 27, 1914.

Case by David Foley against the Detroit & Macki-
nac Railway Company for personal injuries.    Judg-
ment for plaintiff.    Defendant brings error.    Re-
versed.

*Henry, Henry & Henry (James McNamara,* of
counsel), for appellant.

*Hall, DeFoe & Hall,* for appellee.

STEERE, J.    Plaintiff brought this action to recover

damages for personal injuries sustained in falling from a north-bound passenger train of defendant just as it was leaving the village of Twining, in Arenac county, on the afternoon of July 8, 1912.

A trial by jury in the circuit court of said county resulted in a verdict and judgment in plaintiff's favor for $4,500, and after denial of a motion for a new trial defendant removed the case to this court for review on a writ of error.

On the day in question plaintiff left Toledo to visit a son living in Turner, a village three miles north of Twining, where the accident occurred. Defendant's railroad passes through both towns, extending northerly from Bay City, which is 39 miles south of Twining. Plaintiff was 59 years of age, somewhat hard of hearing, and his then business was acting as caretaker of certain mines in Canada, for which he received $90 per month. His ticket, bought in Toledo, took him north from Bay City over defendant's road. He carried a suit case 20x14 inches weighing 35 or 40 pounds. On his arrival at Bay City about 5:30 p. m., he proceeded to take the regular connecting north-bound train of defendant which was about to start, but the cars were crowded, and, at the suggestion of the conductor, he waited for an excursion train which left about 15 or 20 minutes later. As the train which he had taken approached Twining, the brakeman called the station, and, understanding it to be Turner, his destination, plaintiff left the train when it stopped. He testified that before the train stopped he asked the man who had called the station if this was Turner, and the man replied, "Yes, Turner is the next station," and took the ticket out of his hat. This is denied. The brakeman testified that in an answer to previous inquiries he had told plaintiff he would notify him when Turner was reached, and when asked the question after he called Twining he replied, "No,

the next station was Turner." On getting off the train plaintiff walked about ten feet away from it, put down his grip, and looking around discovered he was not at Turner, the appearance of which he remembered from a former visit. He then went back to reboard the train, which he stated had stopped about a minute and a half and was about to proceed. He describes the immediately subsequent events as follows:

"I turned around to get back on the train. I took hold of the bar with my left hand—this bar was at the end of the car—the framework of the car. I was on the left-hand side. I had a leather suit case about 20 inches long and 14 inches wide. It might have weighed about 35 or 40 pounds. I took hold of the bar to get back on the train, * * * and as I caught hold of the bar and with my feet on the lower step the train pulled out. * * * My suit case got foul, and as the train was going I couldn't swing myself in onto the car and it got fouled there or got fast and my trying to get it loose I kind of lost my balance and I seen I was going and I sent myself away from the train so as to avoid an accident under the wheels. That is all I know of what happened."

Of his injuries he says:

"I was injured in the right shoulder and all the way down my arm. * * * My injury to my side was about halfway down from my hip up to under my armpit. * * * My leg was broken about half way between the ankle and knee. It was a compound fracture. Both bones were splintered. One bone came out through the pants. I was taken to Mercy Hospital at Bay City and treated by Dr. Tupper and was there from July 8th to October 30th."

Of his position when the train started he again says on cross-examination:

"I had my grip in my right hand. I caught hold of the train with my left hand, and, when I got both feet on the thing, the train started up."

The fact that he was quite seriously injured is not

disputed, though there is an issue on the extent and permanency of his injuries.

While numerous errors are assigned, and various questions are raised and discussed as to negligence and contributory negligence, on different theories of what is or is not shown by the evidence, upon the case as developed it is sufficient to consider two assignments of error, which raise defendant's contentions that a verdict should have been directed in its favor, and that the court erroneously instructed the jury that plaintiff's leaving the train, by reason of the negligence of a member of the crew in misinforming him as to the station, might have a bearing on the question of his contributory negligence when seeking to reboard the train.

The only ground of negligence by defendant submitted to the jury is thus plainly stated by the trial judge in his charge:

"His claim is that, while he was in the act of boarding the train, the defendant company, through its train crew, started the train in motion without giving him a reasonable length of time in which to get safely on this train."

The rights and duties of passenger and carrier upon that proposition were clearly stated and explained in the instructions given. The jury was told that when a passenger train stops at a station there is an implied invitation for passengers to get on board or to alight, and it is the duty of those in charge to stay a reasonable time for those who have arrived at their destination to get off and for those desiring to take the train to get on in safety.

It was claimed by defendant that plaintiff did not leave the train at the station when it stopped, but fell in attempting to get off after it had started therefrom; or, if his claim of when he left the train is true, it is shown beyond question that he attempted to get

on board again after it had started, under such circumstances as render him guilty of contributory negligence and preclude his recovery.

Plaintiff denied attempting to board the train after it started, and claimed that he began to mount the steps while it was yet standing still; that it was suddenly and negligently started just as he got upon the lower step and before he had time to reach a position of safety. This question of fact was left to the jury. The court narrowed the case to that issue and plainly charged that, if plaintiff attempted to board or leave a moving train, he took his chances and could not recover, and further said:

"It was his duty to take into consideration the length of time the train had stopped at the station, and the probabilities of its starting; and if, from all the circumstances within his knowledge, he had reason to believe that the train would start before he could safely board it, then he would be chargeable with all the risks incident to boarding such train."

The conductor and brakeman testified that they stopped at the station sufficient length of time for all passengers to safely get on and off; that during the stop they stood in their proper positions as required by the rules of the road, on the platform of the station beside their train, the conductor forward at the head car nearest the engineer, where he could signal him, and the three brakemen strung along the side of the train at the various car steps, looking after the passengers; that it was the duty of the brakemen to signal the conductor to go ahead when all was clear, which signified, "There is no more passengers getting off or on;" that the train was not started until such conditions existed and such signal given when, as the train started, they swung aboard; and that none of them saw plaintiff attempting to get on.

If just at that time plaintiff, an elderly man carrying a heavy suit case, approached the train on the

platform side and seizing the rail with his free hand was in the act of mounting, standing on the bottom step, hanging by one hand and struggling at his luggage with the other, it was negligence to start while he was in that condition if they did see him, and also negligence not to see him.

Not only does plaintiff testify that he had then just got on the lower step and was struggling with his suit case to get fully on board, but other witnesses sustain him. This was a special train carrying numerous passengers returning from attending a circus at Bay City. It was run by an extra crew taken mostly from freight trains and was not held down by schedule time. The quicker they made the run, the sooner their work was over. Witnesses testified the train started before the passengers had all alighted. Mrs. Jaynes testifies:

"As soon as the train stopped, our party got up to go out. We did not have any luggage. * * * Our party went out as rapidly as possible to get off the train before it started. * * * We just no more than stepped off the train when it started."

Another member of the same party said:

"The train started just as I stepped off. I could feel the train move when I left to step down onto the ground."

Mrs. Townsend testified that as she got off she saw plaintiff on the lower adjoining steps facing as though he was getting up, with his suit case ahead of him. She states:

"After the train stopped, I got off right straight, just as soon as I could get off. There was just one gentleman ahead of me getting off. He didn't interfere with me getting off at all. * * * My daughter was a second or so behind me. The train was in motion when my daughter got off. Still she was only a second or so behind me."

Upon the question of directing a verdict for de-

fendant, plaintiff's testimony is to be taken as true and considered in the light most favorable to him. We cannot say on this testimony as a matter of law that he was guilty of contributory negligence.

The case of *Michigan Central R. Co.* v. *Coleman,* 28 Mich. 440, involves questions similar to those arising here, and treats exhaustively the rights and duties of passenger and carrier when trains stop to receive and discharge their passengers. In that case plaintiff was held guilty of contributory negligence as a matter of law because of trying to board the train in the nighttime, from the ground, on the side most distant from the station, and away from the platform furnished for convenience of passengers, on which the conductor properly stood watching; but the court fully recognizes the duty of those in charge of the train to notice, on the proper side, the approach and conduct of persons indicating a design to get on board, and to guard against exposing them to danger by prematurely starting.

The court instructed the jury that, if plaintiff was induced to leave the train by representations made to him on the train by defendant's agent—

"That would relieve him from the promptitude which would otherwise be required of passengers intending to board a train. In other words, you have a right to take that fact into consideration when you are determining the question as to whether or not he was guilty of contributory negligence in what he did. * * * You have a right to consider it as bearing upon the question of whether or not the train crew were guilty of negligence in starting the train before giving him a reasonable opportunity to board it."

It seems difficult to put any other construction upon the testimony of plaintiff himself, who stated that he had been deaf for 30 years, than that he misunderstood defendant's agent as to the name of the station they were approaching and left the train at Twining

under a misapprehension resulting from his deafness. Assuming it is shown that there was in that particular an act of negligence by defendant's agent, it was a distinct, actionable wrong, independent of and in no sense the cause, proximate or remote, of the negligence for which this action was brought. It may be said in a sense to have been the occasion of it, and the cause of his leaving the train, but it could not tend to change the rule as to the subsequent duty or liability of either party, passenger or carrier, when plaintiff later decided to take the departing train. The cause of his taking the train furnishes no test. Defendant was under just the same duty and obligation to him in that respect, and he was held to the same care for his own safety as any other passenger about to get on board, who might have stepped off during the stop to send a telegram, or just arrived from the country, or who had been awaiting the train's arrival.

It is true the circuit judge did not submit the question of imparting erroneous information to the jury as a ground of recovery, but the instruction complained of so left it for the jury to blend in their deliberation the two causes of action, and by reason of the first magnify defendant's second negligence and plaintiff's freedom from negligence, as to put a greater burden upon defendant and in effect change the rules of negligence.

The application of distinctions between remote and proximate cause, or cause and occasion, is in many cases difficult and confusing. As ordinarily viewed, repetition of wrongs, even though not connected, tends to magnify the last. This case was closely contested and its conflicting testimony, covering the two alleged acts of negligence by defendant, if not carefully guarded, yielded readily to the suggestion that because of the first act a severer rule should be ap-

plied to the second. We are impelled to the view that the portion of the charge complained of was prejudicial to the rights of the defendant.

For this reason the judgment must be reversed, and a new trial granted.

MCALVAY, C. J., and BROOKE, KUHN, STONE, OSTRANDER, BIRD, and MOORE, JJ., concurred.