MURPHY *v.* PERE MARQUETTE RAILROAD CO.

1. CARRIERS—NEGLIGENCE—BOARDING MOVING TRAIN.
   A passenger who alights at a station for exercise and on
   the announcement being made that the train is about to
   start, attempts to board the car which has commenced to
   move and is increasing in speed, especially if he is in-
   cumbered by an umbrella or other impedimenta and has
   been given ample opportunity to re-enter the train, is
   chargeable with contributory negligence barring the re-
   covery of his estate for the negligent killing.[1]

2. SAME—CONTRIBUTORY NEGLIGENCE—RAILROADS.
   Boarding a moving train is at least *prima facie* evidence
   of contributory negligence.

Error to Berrien; Bridgman, J. Submitted October
6, 1914. (Docket No. 6.) Decided December 19,
1914.

Case by Catherine M. Murphy, administratrix of
the estate of Alexander Murphy, deceased, against the
Pere Marquette Railroad Company for the negligent
killing of decedent. Judgment for plaintiff. Defend-
ant brings error. Reversed; new trial denied.

*Parker, Shields & Brown* (*Gore & Harvey, S. L.
Merriam,* and *John C. Bills,* of counsel), for appellant.

*O'Hara & O'Hara,* for appellee.

STONE, J. This action was brought by the adminis-
tratrix of his estate to recover damages resulting
from the death of Alexander L. Murphy on July 23,
1910, caused by the alleged negligence of the defend-
ant. The declaration alleges that plaintiff's intestate

---

[1] As to the negligence of a passenger in getting on or off a
moving train, see notes in 21 L. R. A. 358; 24 L. R. A. 711, and
22 L. R. A. (N. S.) 741.

became a passenger on one of defendant's trains, having purchased a ticket from Chicago, Ill., to Bangor, Mich.; that it was the duty of the defendant to keep its depots, with their platforms, along such railroad between Chicago and Bangor in safe condition, and to safely carry said Murphy to his destination. It is alleged that Murphy, upon arrival of the train, left it at Benton Harbor, an intermediate station, for a few minutes' rest and invigoration, and that while there it was defendant's duty to keep its station platform in safe condition for passengers in getting on and off the cars at said station. That disregarding this duty, and while the plaintiff's intestate was on its station platform, it—

"Carelessly and negligently allowed and permitted a large baggage or express truck to be and remain upon said platform, within a few inches from the edge thereof, adjacent to the track of said defendant upon which the said passenger train was remaining aforesaid, and near to and within a few inches of the coaches of said train.

"Plaintiff further says that when the conductor of said passenger train announced that the train was ready to depart, plaintiff's intestate, being all the time in the exercise of due care and caution on his part, and not knowing of the dangerous proximity of said truck to the said train, attempted to board said train from said platform, got hold of the handlebars or railing on the steps leading to the platform of one of the coaches of said passenger train, with perhaps not more than one foot upon said coach steps, when the said train started, and by reason of the said truck standing where it did, the said truck in some manner, not fully known, caught plaintiff's intestate and brushed him off the said car steps, hurling him to the ground between the said station platform and the track of the defendant's said railroad, and onto the said railroad track, and several of the cars of said defendant's train passed over his body, and then and there on said day killed him."

At the trial it appeared that plaintiff's decedent, as

a passenger, took defendant's train at Chicago on the day in question, and rode as far as Benton Harbor, Mich. The train was composed of an engine, tender, and seven or eight cars. It made two stops at Benton Harbor, the first about three car lengths from the depot, to coal, and the other at the depot. Murphy alighted at the first stop, and walked towards the depot. After the train pulled ahead to the depot, it stood there some five or six minutes. The length of the depot building, known as the Union Depot, was 135 feet. The express and baggage rooms were located at the west end of the depot. The whole length of the cement platform along the tracks was 305 feet. The conductor registered his train as arriving at Benton Harbor at 5:20 p. m. When the train stopped at the station he shouted, "All aboard," and after he had registered his train, he came out on the platform and again shouted, "All aboard," and then proceeded to the engine which stood near Fifth street at the easterly end of the platform. He remained near the cab of the engine while the engineer read a train order to him. He then looked at his train to see if all passengers had gotten onto the train. Everything appearing clear, he gave the engineer the signal to proceed by raising his hand, and stepped onto the front end of the first coach. After the train started Murphy was seen running from the depot some 75 feet in a diagonal direction, and along with the train about a coach length, attempting to board the train. At the time deceased attempted to get on the train, it was going somewhere between 4 and 7 miles an hour. A number of witnesses testified that at this time deceased had an umbrella in his right hand, or under his right arm, and a small paper in his left hand. Other witnesses testified that they did not see deceased have an umbrella, or paper, but their testimony was of a negative character, and it must be said that the great weight of the affirmative testimony was

as first above stated. An express truck stood on the
platform near the easterly end thereof, towards Fifth
street. Its exact distance from the edge of the plat-
form or track was a disputed question. One of plain-
tiff's principal witnesses testified: "The last I saw
of Dr. Murphy he was on the run, and the train was
moving."

Another of plaintiff's witnesses testified:

"I seen Dr. Murphy as soon as they hollered, 'All
aboard;' I seen him start for the train. He ran; the
train was going about four miles an hour, or anyway,
as fast as a man will walk. * * * He took hold of
the train with his left hand, and the train was going
easterly. He reached with both hands and only got
one, and catching with that hand rather threw him
this way. * * * When I first saw him I was
standing in front of the depot, and he started from
the south end. Where he had been I do not know, and
the train was pulling out, and he started to run, and
he wanted to board the train, and as he got hold of
the grab, the handlebar, he struck the truck, the
American Express truck, standing right beside the
train. The platform was a concrete stone platform.
The truck was right alongside the train, and as he
tried to board that train he struck his hip against that
truck, and that knocked his feet out from under him,
and he went headlong down between the truck and the
train."

Whether deceased got one foot upon the step of the
car or was running beside the train, with his hand
on the handrail when he hit the truck, was a question
about which the testimony differed.

Another witness for the plaintiff testified:

"When the accident occurred I was about 20 feet
from the main entrance. I was to the east of the main
entrance. I was sitting on the curb. * * * I was
looking northeast; they call it north there. I was
looking toward the track. I saw the conductor going
towards the engine; the engine was very near on Fifth
street. It was not across the street, but facing Fifth
street. Mr. Murphy, he ran diagonally from this

window. I didn't notice Mr. Murphy at the window. * * * Mr. Murphy came on a trot diagonally across here, and I sat here, and the first coach that passed he tried to get on; the people were standing on the platform and the train was going so slow that he missed the next coach; instead of catching the next coach he catched the hind end of the third coach; that is the coach he tried to catch at the head.

"*Q.* How did he catch it?

"*A.* He reached his left hand up like that and pulled himself, with his foot upon the platform, upon the step. As he did that the truck pushed him between the cars, in between two, I should say the two coaches, and that doubled him up in such a way the steps hit him in the back, I should say right there some place [indicating], and there was about 12 inches between the step and the earth, I should call it about that, and the step rolled him out, and the train kept on going, and it throwed him back under the next coach wheel."

The plaintiff's intestate was killed instantly. He was 36 years of age, weighed about 130 pounds, and was active and in good health.

At the close of the plaintiff's testimony, and again at the close of all the testimony, counsel for defendant moved the court to direct a verdict for defendant for the following reasons:

"1. Because it is undisputed upon all the testimony that the contributory negligence of the deceased is conclusively established.

"2. Because reasonable minds cannot differ that the deceased was negligent in attempting to get on the moving train, and such minds cannot differ that such negligence contributed to his injury and death.

"3. Because no negligence whatever is shown on the part of the defendant, or any of its employees.

"4. Because there is no proof that the defendant neglected any duty it owed the plaintiff in the premises.

"5. The plaintiff cannot complain that the truck was left at the end of the platform, opposite the baggage car, while the train was at rest; the train being at rest and no part of the truck being where pas-

sengers could collide with it while getting on the train when the train was at rest; the truck could not possibly interfere with a passenger rightfully and properly attempting to get aboard such train.

"6. The platform of the defendant being absolutely safe for the deceased to have entered any of the coaches while the train was at rest, the truck could not have been made to cut any figure in the case, except by the negligence of the deceased, and such negligence bars a recovery."

The motions were overruled, and exceptions duly taken.

The trial resulted in a verdict and judgment for the plaintiff.

The above-quoted points, and others, were urged upon a motion for a new trial, which was denied, and the denial duly excepted to by defendant, and the questions are now before us upon proper assignments of error.

A careful reading of this record has impressed us with the claim of the defendant that, under all of the testimony in the case, the plaintiff's intestate was guilty of such negligence in attempting to board a moving train as to bar a recovery. We think that it is undisputed upon all of the testimony that the contributory negligence of the deceased was conclusively shown. By the overwhelming weight of the evidence, it appears that deceased was handicapped and at a disadvantage by having an umbrella under his right arm; there had been ample notice, time, and opportunity given to board the train while at rest, and an ample and clear platform provided upon which to reach the train while standing at the station. One who under such circumstances attempts to board a moving train, which, as in this case, was rapidly picking up speed, is guilty of contributory negligence as matter of law; especially is this so when the undisputed evidence shows that the person had ample time and a reasonably safe ingress to the train while it

stood at the station. The act of deceased was so palpably reckless as to be inexcusable. He was guilty of contributory negligence in attempting to board a moving train as he did, and no fault of the defendant or its employees, short of gross or wanton carelessness, could excuse him from the results of such negligence. It has always been regarded as negligence for a passenger to attempt to enter a car in a running train. *Blair* v. *Railroad Co.*, 60 Mich. 124 (26 N. W. 855).

In *Lake Shore, etc., R. Co.* v. *Bangs,* 47 Mich. 470 (11 N. W. 276), where a passenger jumped from a moving train, Justice Campbell said:

"We have reluctantly felt ourselves compelled to hold that in our judgment such conduct is beyond any question negligence, and that the jury should have been so instructed. The fact that many persons take the risk of leaving cars in motion does not make them any the less risks which they have no right to lay at the door of the railroad companies. No company can use effectively coercive powers to keep passengers from doing such things. All persons of sound mind must be held responsible for knowledge of the usual risks of such traveling. Every one is supposed to know that a fall beside a moving train is very likely to bring some part of the body or limbs in danger of being crushed. Every one is supposed to know that in jumping from a vehicle running six miles an hour, or much less, he stands a good many chances of falling, or being unable to fully control his movements, and that falling near a train is always dangerous. No doubt every one who tries such an experiment persuades himself that he will escape, but it is impossible to suppose any one of common sense does not know that there is danger.    *    *    *

"If it was negligent to do as Bangs did, the rule of the law deprives him of any redress, because there is here no doubt that it was the immediate occasion of the mischief. The case is a very hard one, and he probably did what some others might have done in his place. But the courts cannot allow hard cases to change the rules that they are compelled to administer."

See *Werbowlsky* v. *Railway Co.*, 86 Mich. 236 (48 N. W. 1097, 24 Am. St. Rep. 120) ; *Jacob* v. *Railroad Co.*, 105 Mich. 450 (63 N. W. 502).

The opinion in the last-cited case is worthy of examination, as it distinguishes the case from *McCaslin* v. *Railway Co.*, 93 Mich. 553 (53 N. W. 724), and *Cousins* v. *Railway Co.*, 96 Mich. 386 (56 N. W. 14), cited by plaintiff's counsel in the instant case. In the *Cousins Case*, Justice MONTGOMERY said:

"The law upon the subject ought no longer to be in doubt. It is undoubtedly *prima facie* negligent for a passenger to alight from or board a moving train, but it is not in all cases negligence *per se* to attempt to do so. If one is, by the wrongful act of the carrier, placed in a position where, under a sudden impulse to save himself from serious inconvenience, he attempts to alight from a moving train, where the danger is not imminent, and where persons of ordinary care and caution would make the attempt, it is not necessarily negligent."

We understand the doctrine of the last-cited case to be that, on first view, or on the face of the act, it is negligent for a passenger to attempt to alight from or board a moving train, but there may be attending circumstances, like a wrongful act of the carrier, or where the danger is not imminent or the like, where it would not necessarily be negligent. We have examined the record in vain to find any such attending circumstances here. The train had been standing at the station five or six minutes, the signals for starting the train were ample and timely, no fault on the part of the carrier is claimed at this point, and it does appear that deceased was simply loitering about the station, at a time when he should have been upon the train. *Burden* v. *Railway Co.*, 104 Mich. 101 (62 N. W. 173) ; *Michigan Central R. Co.* v. *Coleman*, 28 Mich. 440; *Foley* v. *Railway Co.*, 179 Mich. 586 (146 N. W. 186).

Many more of our own cases might be cited in sup-

port of the general doctrine here stated.   See *Smith
v. Accident Ass'n,* 104 Mich. 634 (62 N. W. 990).
We see nothing in the circumstances which could
change the general rule, or excuse the act.

In *St. Louis, etc., R. Co.* v. *Dewees,* 153 Fed. 56, 82
C. C. A. 190, Van Devanter, C. J., used the following
appropriate language:

"It is undoubtedly true that cases are not lightly
to be withdrawn from the jury, and that ordinarily
negligence is so far a question of fact that it should
be submitted to and  determined  by them, but it is
equally true that when the evidence and the inferences
to be reasonably drawn from it are undisputed, or are
of such conclusive character that the exercise of a
sound judicial discretion would permit the court to
give effect to but one verdict, the case may and should
be withdrawn from the jury, and a verdict directed
for the plaintiff or the defendant, as the one or the
other may be proper."

We have examined the authorities cited from other
States.   In *Browne* v. *Railroad Co.,* 108 N. C. 34 (12
S. E. 958), the conductor of a train had ordered a
passenger to go to a coach and get in, and then signal-
ed the engineer to start the train without waiting to
see whether the passenger had gotton on.   It was
held that the company was not liable for the injuries
received by the passenger in trying to get on the car
in motion, where the train had already been stopped
a reasonable time, and the passenger had wilfully de-
layed to get on it, and that in order to avoid the im-
putation of contributory negligence in so boarding the
moving train, the passenger must show that he did
so without manifest risk to himself, or that the train
did not stop long enough for him to board it while it
was stationary.   The court said:

"The general rule is that passengers who are in-
jured while attempting to get on or off a moving train,
cannot recover for the injury. *Phillips* v. *Railroad
Co.,* 49 N. Y. 177; Beach, Railway Law, § 987.

"And of course this, like all other general rules, is subject to some exceptions. Where a train is stopped at a station, and, after passengers are told to go aboard, it is suddenly started before they have had time to do so, and when, without unreasonable delay they are trying to get upon it, if a passenger who is in the act of getting upon the platform is injured by the sudden jerk of starting, without signal, the court may submit the question of negligence to the jury, but the company is under no obligation to delay the departure of the train beyond the usual time because a passenger has purposely or negligently deferred getting on it till the last moment, though he had abundant time to do so while it was standing still."

In *Hunter, Adm'r,* v. *Railroad Co.,* 112 N. Y. 371 (19 N. E. 820, 2 L. R. A. 832, 8 Am. St. Rep. 752), the New York court of appeals held that endeavoring to board a train moving at the rate of six miles an hour is an act of such danger as to prevent any recovery from the railroad company for the death of the person attempting it, even though the train was about to pass the station where it was advertised to stop, and where he was waiting for it, without stopping, and the conductor called to him to jump on if he was going. In that case Peckham, J., delivered the opinion of the court, and reviews the New York cases, quoting the language of Andrews, J., in *Solomon* v. *Railway Co.,* 103 N. Y. 437 (9 N. E. 430, 57 Am. Rep. 760), as follows:

" 'Negligence, no doubt, is usually a question of fact, of which the jury must inquire, but the inference of negligence in a given case may be so clear and convincing that the judge may direct a verdict. The conclusion that it is *prima facie* dangerous to alight from a moving train is founded on our general knowledge and common experience, and it is akin to the conclusion, now generally accepted, that it is in law a dangerous, and therefore a negligent, act, unless explained and justified by special circumstances, to attempt to cross a railroad track without looking for approaching trains. In boarding a moving train there is gen-

erally less excuse than in alighting from one. The party attempting it is not often under the same stress of circumstances as frequently happens in the former case. He may be compelled to wait for another train, but this is an inconvenience merely, which does not justify exposing himself to hazard. * * * If men will take such hazards, they must bear the consequences of their own rashness; and it is no just reason for visiting the consequences upon another that his negligence co-operated in producing the result.' "

Judge Peckham continues:

"We think that the facts in this case are so overwhelming in their nature that no reasonable judgment can be formed as to the act of the deceased in attempting to jump upon this moving train other than that it was dangerous and reckless, and that the injury resulting therefrom was contributed to by him.

"We do not regard it as of the slighest importance, under the circumstances of this case, that the conductor of the train notified the deceased to jump on. That notification certainly cannot be interpreted to mean more than that the train would not stop or go slower than it was then going, and that if the deceased wanted to take it he must jump on at that moment. That does not alter the highly dangerous nature of the act itself. The deceased was in absolute safety at the time the direction was given. It created no emergency which called for the exercise of immediate judgment in the choice between the two dangers. It was a simple question of possible inconvenience, * * * and it afforded not the slightest justification or excuse for attempting to board a train moving at that rate of speed, and when he did it, he did it at his own risk.

"We think the plaintiff, upon this state of facts, should have been nonsuited."

This case was before the court of appeals again, and is found reported in *Hunter* v. *Railroad Co.*, 126 N. Y. 18 (26 N. E. 958, 12 L. R. A. 429). A new trial had been had in which the plaintiff had recovered on some new evidence that the speed of the train was between one and two miles an hour. The court said:

"Of these witnesses, two had previously testified to a speed of four to six miles an hour, and the other had not testified upon that subject.

"In view of the doubt justly resting upon the character and correctness of this evidence, we might very properly say that it was open to the court to take as the fact concerning the speed of the train the evidence given by the other witnesses in the case for both parties, which placed it at about six miles an hour. But we shall, for the purposes of the case, assume that the evidence as now given left it a question   *   *   *   as to how fast the train was moving past the station. We will accept that rate of speed deemed by the plaintiffs as most favorable to their contention, and still we must hold that the plaintiffs were not entitled to a recovery on their case. The conclusion was irresistible from the facts that the conduct of plaintiffs' intestate was negligent, and that his act contributed to his injuries and death."

In *Missouri Pacific R. Co.* v. *Railroad Co.* (Laboy, Intervener), the circuit court for the eastern district of Louisiana, 36 Fed. 879, the intervener sought to recover of the Texas & Pacific Railroad Company damages for injuries received while attempting to board the defendant's train, operated by receivers of said road. The master reported adversely to the claim, and the intervener excepted. Pardee, J., said:

"The evidence establishes, as the master reports, that the intervener received the injuries of which he complains in attempting to get on the passenger train of the Texas & Pacific Railway Company while the same was in motion, and before it stopped at a regular station on the line; that in so getting on the train he was neither advised nor compelled by the agents of the company, and that the intervener's said attempt contributed directly to his injuries. It is the settled jurisprudence of Louisiana, whose laws control as to the responsibility in this case, that no person can recover damages for injuries received where he has himself contributed to the negligence which caused the injury. See *Knight* v. *Railroad Co.*, 23 La. Ann. 462, and cases there cited.

"Attempting to mount a moving railroad train without the advice and direction of the railroad's agents is negligence, according to all respectable authorities, text-books, and adjudged cases. See Shearman, R. Neg. § 283; Hutch. Carr. § 641; 2 Ror. R. R. 1111."

In *Tobin* v. *Railroad Co.*, 211 Pa. 457 (60 Atl. 999), the *per curiam* opinion is so short that we quote the same:

"The plaintiff, was injured at a station where the tracks of the defendant's road were elevated to avoid crossing a city street at grade. The station platform was 13 feet wide and 340 feet long, and extended to the side of the street. Across the end of the platform above the street there was a fence 3½ feet high for the protection of passengers. A train reached the station when the plaintiff was on the street below, and when he was at the top of the stairs which led from the street to the platform, it was standing, or, if started, it was moving so slowly that he did not observe its motion. He walked slowly across the platform and got on the first step of the car, which was then in motion. Before he mounted the second step, his back was struck by the end of the fence, which was 7 inches from the side of the car and about 22 feet from the place where he got on the step.

"No conclusion could have been reached from the plaintiff's testimony that would have relieved him from the imputation of negligence. There was nothing in the circumstances to make the case an exception to the rule that it is negligence *per se* to step on a moving train. Nor can it be said that the plaintiff escaped the risk which he assumed, and was afterwards injured by some negligent act of the railroad company. He was never safely on the train, nor in a position in which his body did not extend at least 7 inches beyond the side of the car during the time he was carried forward 22 feet to the fence. No negligence of the company was shown. There was no sudden start or jar of the car as the plaintiff was getting on, and there was nothing of an unusual character in the construction of the station platform or fence."

The judgment for defendant was affirmed. See Elliott on Railroads, § 1642; *San Antonio, etc., R. Co.* v. *Trigo,* 49 Tex. Civ. App. 523 (101 S. W. 254).

The following cases are cited by plaintiff's counsel:

In *Irvin* v. *Railway Co.,* 81 Kan. 649 (106 Pac. 1063, 26 L. R. A. [N. S.] 739), it was held that it was not negligence *per se* to get on or off a moving train; that, generally, whether it is negligence or not is a question for the jury. In that case the question of contributory negligence was especially pleaded and relied upon as a defense. There was a general verdict for the plaintiff upon all the issues presented, and the court held upon appeal that it was too late to raise the question then. The parties were concluded by the verdict. Two persons got upon the rear step of the rear car, and the plaintiff, being upon the lower step, was prevented from getting upon the other step by reason of the obstacle presented by the other passenger, and he was injured by striking against a truck upon the platform. It was held that the case presented a question for the jury.

In an earlier Kansas case, that of *Atchison, etc., R. Co.* v. *Holloway,* 71 Kan. 1 (80 Pac. 31, 114 Am. St. Rep. 462), the person had entered the station and purchased a ticket intending to take a passenger train soon to arrive, and the case holds that such a party acquired the status of a passenger, and it became the duty of the railroad to exercise reasonable care to provide him a safe approach to the train, and reasonable time and opportunity to get aboard; that the running of a freight train between the station and the passenger train, thus blocking the access of passengers to the passenger train during the time it stopped at the station, was negligence as to the awaiting passenger, who suffered injury by reason of insufficient opportunity to get aboard. That an attempt of a passenger to board a moving train, although attended with some danger, is not, under all circumstances, contributory

negligence. It was held that if the speed of the train and the difficulties in the way of boarding it are so obviously dangerous that a person of ordinary prudence would not attempt to get on the train, a passenger who makes the attempt and is injured is guilty of such contributory negligence as would bar a recovery.

In this case, the injured passenger, a strong, ablebodied man, accustomed to getting on and off cars, attempted to board a train moving at the rate of four miles an hour, which he was waiting to take, and which he had not been afforded a reasonable opportunity to get on while it was at rest. The day was clear, and the ground where he made the attempt was smooth. *Held,* that it cannot be said, as matter of law, that the attempt was so obviously dangerous as to constitute contributory negligence, and that whether there was such negligence was a proper question to leave to the jury. The court said:

"It is the duty of a passenger to be reasonably alert and prompt in boarding a train, but, considering that the freight train concealed the incoming passenger train and blocked the passage from the station to it we cannot say that Holloway was not reasonably prompt and diligent in his efforts to get on board the cars. The stop of the passenger train was very brief —altogether too much so, considering the surrounding circumstances."

The court quotes the following rule from Thompson on Negligence, § 2995:

" 'It cannot be affirmed that a person is guilty of contributory negligence as matter of law from the mere fact that he attempts to board a railroad train while it is in motion. If the train does not stop at the proper stopping place for a sufficient length of time to enable the passenger to get on before it starts, and the passenger, thus coerced by the negligence of the company, attempts to board the train while it is slowly moving, and is injured in the attempt, con-

tributory negligence will not be imputed to him, but he will be allowed to recover damages.'"

The court also cited *Johnson* v. *Railroad Co.*, 70 Pa. 357.

It is said in that case that the train had started before the passengers had had sufficient time to get on board, and the plaintiff incumbered with a valise and a number of packages, missed his footing and his arm was crushed by the wheels of the car. It was urged that it should have been declared, as a matter of law, that he was negligent. The court said:

"The fact appears to be clear that a reasonable time for the transfer was not given, and that the plaintiff, with all his effort to make haste, was unable to make the connection in consequence of this want of time. Now, though the train was distinctly in motion, so that a bystander, cool and unconcerned, could see it visibly running on the track, are we to say as a matter of law binding on the jury, that a passenger having a right to go on the train, and seeing himself about to be left improperly by the wayside, is guilty of culpable legal negligence if he should essay to reach his destination, no matter how slow the motion in running might be, or how little danger was apparent to him? He may be guilty of negligence, but of this the jury should judge under the circumstances."

In *Wooten* v. *Railroad Co.*, 79 Miss. 26 (29 South. 61), the defendant, a railway company, had tickets for an excursion, but none were on sale in the town where the decedent lived. Decedent, wishing to go, arranged to have tickets from the next station brought to him by the baggagemaster on the excursion train. As soon as the train arrived he took the tickets, signed them as required by the company, and attempted to board the train, which was already moving slowly, and was hurled against a baggage truck, thrown under the cars and killed. His wife, niece, and granddaughter had been helped on board by a friend, and had no time to get their seats before the train started. *Held,*

that the question of decedent's contributory negligence should have been submitted to the jury.   The court said:

"Mr. Wooten's situation was even more urgent than that of an ordinary passenger.   He had arranged for tickets to be brought to him there.   They were sent by the company.   They were useless until he signed them, which he did as soon as he could, but the train actually started before his family were comfortably seated; before they could get their basket of fruit into the car.   Under these circumstances   *   *   *   the jury should have been allowed   *   *   *   to pass on the question of negligence."

In *Illinois Central R. Co.* v. *Glover* (Ky.), 71 S. W. 630, the question of whether a passenger who got off his train at an intermediate station and undertook, under the direction of the conductor, to board it again while moving, was guilty of contributory negligence was held to be a question for the jury.   The court said:

"While there is some conflict in the authorities, the later cases sustain the rule that, where a passenger gets off his train at an intermediate station, and then undertakes to board it, while moving slowly, by the direction of the conductor or servant in charge, he is not *per se* guilty of negligence; but it is a question for the jury whether, considering the speed of the train, the direction he received, and other circumstances, he exercised proper care."

*Mills* v. *Railway Co.*, 94 Tex. 242 (59 S. W. 874, 55 L. R. A. 497).   In that case there was evidence that the defendant failed to perform its duties which it owed to the plaintiff.   It was claimed that the passenger had been denied the opportunity to get a ticket, and it appeared that by reason of the absence of the ticket agent he was unable to reach the train until it commenced to move.   Under those circumstances it was held that it was not negligence *per se* to attempt to go upon a slowly moving train.

We think that it appears that the cases cited by plaintiff's counsel are exceptional cases, and do not change the general rule.

It may be said that the cases are uniform in holding that boarding a moving train is at least *prima facie* negligence, and that in the instant case the plaintiff offered no testimony which showed, or tended to show, any justification or excuse on the part of the deceased. Under the facts in the case and the law applicable thereto, the trial court should have withdrawn the case from the jury, and directed a verdict for the defendant, on the ground of the contributory negligence of plaintiff's decedent.

This conclusion renders it unnecessary to consider the other assignments of error.

For the error pointed out, the judgment of the circuit court is reversed, and no new trial granted

McALVAY, C. J., and BROOKE, KUHN, OSTRANDER, MOORE, and STEERE, JJ., concurred. BIRD, J., did not sit.