WANTA, Administrator, Appellant, vs. MILWAUKEE ELECTRIC RAILWAY & LIGHT COMPANY and the CITY OF MILWAUKEE, Respondents.

*December 6, 1911—February 20, 1912.*

*Municipal corporations: Defective streets: Injury to traveler: Contributory negligence: Questions for jury: Evidence: Weight: Estimates and actual measurements.*

1. A hole one and three-quarters inches deep is, as a matter of law, not an actionable defect in a street; but where a hole therein was six inches deep and about eighteen inches wide and twenty-four inches long, a jury might find that the street was not reasonably safe and that the city was negligent in not repairing it.

2. Testimony as to dimensions or distances which is based on memory or casual observation and is at best only an estimate must yield to that which is based on actual measurements; but the testimony of a witness who made actual measurements and remembers what they were is not to be treated as a mere estimate or to be disregarded merely because he is unable to produce the memorandum, made at the time, showing such measurements.

3. Where holes in the street were numerous, but travel thereon was not so obviously dangerous that a person ought to be held negligent in attempting to drive over it at all, it may be a question for the jury whether he was negligent in failing to see and avoid a particular hole which caused him to be thrown from his wagon and injured.

APPEAL from a judgment of the circuit court for Milwaukee county: ORREN T. WILLIAMS, Circuit Judge. *Reversed.*

On February 22, 1909, Frank Glass, the decedent, while driving a team of horses, hitched to an empty coal wagon, east on Oneida street in the city of *Milwaukee,* fell from the wagon to the pavement, sustaining injuries which caused his death. This action is brought to recover damages for the death of said Glass, the complaint alleging that the defendants permitted large holes to exist in the pavement at and near the point of the accident, both in the portion of the street maintained by said city and the portion between the tracks and one foot outside of each rail, maintained by the defendant railway company; that one of the wheels of the wagon on which decedent was riding dropped into a hole in the pavement, suddenly jerking and rocking the wagon in such a manner that decedent was thrown therefrom. The defendants answered separately. The city denied that any want of repair or insufficiency existed in said pavement, but alleged that, if any such defects did exist, the defendant railway company was responsible and not the city. The answer of the railway company was a general denial of the allegations of the complaint. On a directed verdict judgment was entered dismissing the complaint as to each of the defendants, and from such judgment plaintiff appeals.

For the appellant there was a brief signed by *Rubin & Lehr,* attorneys, and *W. B. Rubin* and *H. B. Walmsley,* of counsel, and oral argument by *Mr. W. B. Rubin* and *Mr. Walmsley.*

For the respondent *Milwaukee Electric Railway & Light Company* there was a brief by *Van Dyke, Rosecrantz, Shaw & Van Dyke;* for the respondent *City of Milwaukee* a brief by *Daniel W. Hoan,* city attorney, and *W. H. Timlin, Jr.,* special assistant city attorney, of counsel; and the cause was argued orally by *Mr. James D. Shaw* and *Mr. Timlin.*

The following opinion was filed January 9, 1912:

Barnes, J. The witnesses for the defense testified in substance that when the front wheels of the wagon which de-

ceased was driving struck the north rail of the north track the wheels skidded along the rail to the right for some distance, and that it was this movement that caused the decedent to fall. These witnesses negative the idea that the fall was caused by one or more of the wagon wheels dropping into a hole.

The witness Bork testified for the plaintiff that the wagon wheels dropped into one and probably two holes before the deceased was thrown out; that the left front wheel of the wagon came in contact with the south rail of the north track and the right front wheel in contact with the north rail of the south track, and that the wagon slid to the east until the left wheel dropped into a hole, and the sudden stop threw deceased out. The testimony of this witness as it appears in the record is very confusing. Some of it was given with reference to a plat which the witness had before him, and this evidence is entirely meaningless to us. We think the foregoing statement contains a synopsis of what the witness testified to.

John Schwartz testified that he was an eye-witness to the casualty and that the wagon struck one or two holes before the deceased was thrown off, and that his fall was caused by one of the wagon wheels dropping into a hole, which seems to have been between the rails of the south track of the street railway company. In any event, the witness testified that he showed the hole to the plaintiff, *Wanta,* the following morning, and *Wanta* testified that the hole shown him was between the rails of the south track. The latter also testified that this hole was about one and one-half by two feet in size and was six inches deep, and that he ascertained the depth by placing a stick forty inches long over the hole and measuring the distance with a rule from the bottom of the stick to the bottom of the hole. Witness said the stick was not real straight. Schwartz in testifying at the coroner's inquest seems to have located the hole between the rails of the north track, and at least to this extent there is some contradiction in his testimony.

There is no doubt that there were a number of holes in the street near where decedent met his death. One witness said there were as many as fifteen, and it is not seriously claimed that there were not some holes, because several were filled with fine gravel immediately after the accident. There was evidence offered by the defendants to show that the gravel had been cleaned out of these holes a few weeks afterward and a straight-edge placed over them and the depths measured by a civil engineer. He found eleven holes or depressions in the street in the vicinity of the place where the accident occurred, varying in depth from one inch to four and one-quarter inches. He located three of those between the rails of the south track, and found that the hole which *Wanta* evidently described was only one and three-quarters inches in depth. If this testimony is true, then there is no actionable negligence on the part of the city. *Kawiecka v. Superior,* 136 Wis. 613, 118 N. W. 192. If there was such a defect in the street as that testified to by *Wanta,* it is very clear from the decisions that the jury might find that it was not reasonably safe and that the defendant city was negligent in not repairing it. *Cremer v. Portland,* 36 Wis. 92; *Stilling v. Thorp,* 54 Wis. 528, 11 N. W. 906; *Schroth v. Prescott,* 63 Wis. 652, 24 N. W. 405; *Schroth v. Prescott,* 68 Wis. 678, 32 N. W. 621; *Brunette v. Gagen,* 106 Wis. 618, 82 N. W. 564; *Dralle v. Reedsburg,* 130 Wis. 347, 110 N. W. 210.

This court has often held that the testimony of disinterested and unimpeached witnesses on subjects like measurements and distances, and which is based on memory or casual observation and is at best only an estimate, must yield to that which is based on actual measurement. The estimate in such a case may and generally should be disregarded. *Burroughs v. Milwaukee,* 110 Wis. 478, 86 N. W. 159; *Koepke v. Milwaukee,* 112 Wis. 475, 88 N. W. 238; *Konkel v. Pella,* 122 Wis. 143, 99 N. W. 453; *Busse v. State,* 129 Wis. 171, 173,

108 N. W. 64. Respondents invoke this rule of law to sustain the judgment. It would not seem to be applicable. *Wanta,* if he told the truth, made an actual measurement as well as Webster did. The stick which he used for a straightedge might not have been exactly straight, but the jury might well have found that it was substantially so. His measurement was made the day after the accident, while the Webster measurement was made several weeks thereafter and after the holes had been filled up with fine gravel, although the testimony strongly tended to show that the gravel had been removed from the holes before the measurements were taken. It would seem to be apparent that there is a question as to the credibility of those two witnesses, which the jury and not the court should settle. It is true that Webster produced the measurements which he made on the trial and that *Wanta* did not, and that the latter said he had either lost or mislaid the figures which he made. The failure to produce the memorandum did not make the testimony of *Wanta* mere guesswork or the figures which he made a mere estimate. Assuming that he made the measurement to which he testified, he knew accurately just what the depth of the hole was when the measurement was made. Having gone to the spot for the purpose of ascertaining the depth of this hole, there is nothing remarkable about the witness remembering just what that depth was. The information was procured for use in a lawsuit and would be apt to leave a distinct and lasting impression on the mind. There is a material difference between the testimony of a witness who says that he observed a certain hole a year before and that his present recollection is that it was about two feet deep but that he did not measure it, and that of a witness who says that the hole was three feet deep and that he knows this to be the fact because he measured it a year ago, and, while he did not preserve the figures, he remembers what they were. The one witness never had any

accurate knowledge of what the fact was, while the other did, and the only question is whether his memory accurately retained that knowledge. This is the real distinction drawn between the two kinds of testimony in the cases cited. This court has not said that, where a witness testifies that he made a measurement and remembers what it was, although he is unable to produce it, such evidence must be disregarded if another witness testifies to making the same measurement and produces the figures which he claims to have made at the time. The failure to preserve the figures might affect the weight of the evidence, but nevertheless a jury might believe it if they saw fit. While we are not unmindful of the deference which this court should show to the decision of the trial court on a question of this kind, we think that the jury should have been permitted to pass upon the relative credibility of the testimony referred to.

It is urged in the brief of counsel for the city that the deceased was guilty of contributory negligence, and that the judgment of the circuit court should stand for this reason if for no other. Had there been but a single hole in the asphalt at this street intersection this argument would be quite persuasive, because there was apparently nothing to prevent the driver from seeing and avoiding it. If the holes were as plentiful at this point as some of the witnesses said they were, it might well be difficult, if not impossible, to dodge all of them, and a jury might acquit the deceased of contributory negligence on this ground, as we do not think it was so obviously dangerous to pass over this street that the deceased should be held negligent in attempting to go over it at all. *Lines v. Milwaukee,* 147 Wis. 546, 133 N. W. 592.

We see no necessity for passing upon the rights and liabilities of the defendants as between themselves, and we do not do so. We hold that there was evidence from which the jury might have found that the street was not reasonably safe and that the deceased was not guilty of contributory negligence,

and that therefore it was error to direct a verdict against the plaintiff.

*By the Court.*—Judgment reversed, and cause remanded for a new trial.

On February 20, 1912, upon a motion made on behalf of the *Milwaukee Electric Railway & Light Company,* the above mandate was modified, without costs, by adding thereto the following:

"Costs on this appeal to be taxed against the city only, provided that in case of final judgment in this action in plaintiff's favor against the *Milwaukee Electric Railway & Light Company,* said judgment shall also include a provision that the city recover against said last named company the costs taxed on this appeal, with interest."

TIMLIN, J., took no part.