FLORIDA MOTOR LINES, INC., a Corporation, *Plaintiff in Error*, VS. MOLLIE JANE WARD, a widow, *Defendant in Error*.

137 So. 163.

En Banc.

Opinion filed October 6, 1931.

Petition for rehearing denied February 5, 1932.

1106

*Knight, Thompson & Turner* and *Shutts & Bowen,* for Plaintiff;

*Arthur Codington, John A. Fort* and *Poole* and *Fraser,* for Defendant in Error.

TERRELL, J.—This case grew out of a collision between a motor bus and a Dodge touring car, occurring on the Dixie Highway in Broward County, November 6, 1926. The highway where the collision took place runs north and south over level country and is straight for miles in either direction. The motor bus was owned and was being driven by Plaintiff in Error and the Dodge car was owned and was being driven by the husband of defendant in. Error who was killed as a result of the collision.

This action was brought by the wife of the deceased, for the wrongful death of her husband. The declaration was in one count and claimed damages in the sum of Seventy-five thousand dollars. There was a plea of the general issue and contributory negligence. At the trial, a verdict was rendered in the sum of Thirty-three Thousand, Five Hundred Dollars which was approved by the trial court on condition that Plaintiff enter a remittitur in the sum of twenty thousand dollars. The remittitur was entered and judgment given for the balance. Writ of error was taken to that judgment.

At the time of the accident, the motor bus was proceeding south and the Dodge car was proceeding north. A second car, facing north, was parked on the side of the highway while the occupants were mending a tire. A third car, proceeding north, drove up and parked to the rear of the second car because as the driver, Mr. C. F. Kimler, testified, he did not think he could drive around the second car and proceed on his way without danger of intercepting the motor bus. A fourth car, being the Dodge owned and

driven by Plaintiff's husband, was proceeding north a short distance behind the third car and as it approached said car, it turned to the left to pass the parked cars and collided with the motor bus opposite the third car. The Dodge car was demolished, and its driver and his companion, sitting next to him in the same seat were killed. Two men sitting in the rear seat escaped without injury.

The record discloses that this accident took place on a clear day in the late afternoon, while the sun was still shining. The road was hard surfaced, was unobstructed and was twenty feet wide. The two parked cars had the right wheels slightly off the pavement, some of the witnesses testified as much as one one-half or two feet. The motor bus was running twenty-eight or thirty miles per hour and was well over to its side of the road, the right wheels being slightly off the pavement. There was evidence tending to prove that the motor bus cut sharply to the left about the time it got opposite the second car and in doing so, struck the Dodge car near the left front door with results as stated. The verdict was evidently predicated on this testimony but it was the uncorroborated testimony of two interested parties and was at variance with their testimony as to the same facts at a former hearing held before they were interested.

Occupants of the motor bus at the time of the accident, who were disinterested and in places of vantage testified that the motor bus was proceeding on its side of the road, that the Dodge car turned suddenly to the left from the rear of the parked cars intending to pass them, but in doing so, it swung to the opposite side of the road in the path of the motor bus and collided with the motor bus, striking it on the left front fender, left front wheel, and shock absorber. They also testified that immediately the Dodge turned into the road from the rear of the parked cars, the driver of the motor bus applied his emergency and foot brakes, that the application was so sudden that

the passengers were thrown from their seats, that the impact was so powerful that the rear wheels of the bus were locked, the steering rods were bent, the crank case cracked, and the left front wheel of the motor bus was driven back and fastened under the body, causing it to continue its course to the left side of the road where it came to a stop some distance to the rear of the parked car. This evidence was corroborated by the testimony of the driver of the motor bus and two other witnesses, both employees of the motor bus company. It was also corroborated by the physical evidence on the ground, the condition of the motor bus after the accident, the marks of the motor bus wheels on the pavement when the brakes were applied, the tracks of the motor bus wheels on the "shoulder" to the right of the road, the dislodged shock absorber, and the oil spilled from the crank case when it was cracked, near the right edge of the pavement. The Dodge car took the impact on the left front wheel, fender, and door.

One witness who was riding to the right in the read seat of the Dodge car at the time of the accident testified that the parked cars were entirely off the pavement, that he did not see the motor bus till they were in a very short distance of it, that the Dodge car was running about twenty-five or thirty miles per hour, and that it was traveling near the third car when it came to a stop behind the second. No other evidence supports plaintiff's case.

In this litigation, we conceived the overwhelming weight of the evidence to be that the second and third cars were parked with their right wheels slightly off the pavement, that the motor bus was traveling south, well to its side of the road at twenty-eight or thirty miles per hour, that it was on schedule and that the driver did all that could be done in reason to check its speed when the Dodge car suddenly appeared in its path, that the Dodge car was traveling north at a rapid rate, that it proceeded to a point near the rear of the second and third cars and turned suddenly

to the left into the path of the motor bus when the accident occurred opposite the rear parked car.

It is also contended that the plaintiff in error was negligent in that at the time of the accident, it was operating its motor bus more than twenty-five miles per hour, contrary to the provisions of Section 1023 Revised General Statutes of 1920 (Section 1296 Compiled General Laws of 1927). We understand that section 1023 Revised General Statutes of 1920, in so far as it applies to the operation of motor vehicles on the public highways was repealed and superseded by Section 1318 Compiled General Laws of 1927, the same being Section one of Chapter 10186 Acts of 1925 Laws of Florida. The latter act makes the operation of motor vehicles of the weight and the class as the motor bus involved here, on the public highways outside of a city, town, or village in excess of thirty miles per hour nothing more than prima facie evidence of reckless driving.

This being the rule, the prima facies of reckless driving is subject to be overcome by competent evidence and unless it can be shown that such reckless driving was the proximate cause of the death or injury or had some causative connection between them no liability would attach. Key West Electric Co. vs. Albury, 91 Fla. 695, 109 So. 223; Renfroe vs. Collins, 201 Ala. 489, 78 So. 395; Johnson vs. Cornelius, 200 Mich. 209, 166 N. W. 983, L. R. A. 1918D, 880; Pierson vs. Lyons and Healey, 243 Ill. 370, 90 N. E. 693; Standard Oil Co. vs. Allen, 267 Fed. 645.

In a personal injury action, plaintiff is not required to prove his case beyond a reasonable doubt. It must be proven by a preponderance of the evidence. Pierson vs. Lyon and Healey et al. supra. In the case at bar, plaintiff failed to carry this burden and the decided weight of the evidence not only exculpates the defendant from any negligence but shows that it used all means in reason and within its power to reduce the effect of the collision when it became inevitable. In other words, a verdict and judgment in a

case like this, supported by the evidence of two witnesses who were personally interested in the outcome of the litigation and whose evidence on two occasions as to the same facts was at variance and practically uncorroborated should not be allowed to stand against the testimony of three disinterested witnesses whose testimony was corroborated by three other witnesses who were employees of the defendant in addition to the spilled oil from the crank case near the right edge of the pavement and the impression on the pavement made by the wheels of the motor bus when the brakes were applied, which last, though mute, showed unmistakably where the collision took place.

We find nothing in the record to support negligence on the part of defendant while it fully appears that plaintiff's intestate was responsible for the accident which was the sole proximate cause of his death. To hold that he was guilty of contributory negligence would necessarily imply some negligence on the part of defendant which does not appear, neither is this a case in which the presumptive evidence rule as prescribed in Section 4964 Revised General Statutes of 1920 (Section 7051 Compiled General Laws of 1927) or the comparative negligence rule as prescribed by Section 4965 Revised General Statutes of 1920 (Section 7052 Compiled General Laws of 1927) may be invoked.

Nothing in this opinion should be construed as intimating that the common carrier has any right superior to that of the citizen to appropriate the use of the highways. The right of a citizen to use the highways including the streets of the city or town for travel and to transport his goods is an inherent right which cannot be taken from him but it is subject to reasonable regulation in the interest of the public good. In degree this right of the citizen is superior to that of the common carrier by motor bus, dray, coach, taxi, or other devise, the latter being controlled by legislative grant, or franchise which may be regulated or denied, and may be given to some and denied to others. State ex rel. Penning-

ton vs. Quigg, 94 Fla. 1056, 114 So. 859, and cases cited.

When a common carrier has been licensed and authorized to use the highways for profit, he becomes a fellow traveler, and like all other travelers is subject to the rules of the road. Farnsworth v. City of Tampa, 62 Fla. 166, 57 So. 223. All travelers on the public streets and highways have the right to assume that other travelers will observe the law of the road, obey all regulations relative to the use of the highways and in general, exercise reasonable care to avoid injury to their fellow travelers. When collisions occur between vehicles, a presumption of negligence arises against the driver who was on the wrong side of the road at the time of the collision. Huddy on Automobiles (5th Edition) 432, 9th ed., Vol. 3-4 Secs. 365.

Section 1023 Revised General Statutes of 1920 (Section 1296 Compiled General Laws of 1927) in effect, provides that when the operator of a motor vehicle desires to pass other vehicles moving in the same direction and at a slower rate of speed, he shall give notice of that purpose by sounding a horn or other device at least one hundred feet to the rear of the front vehicle. The deceased in this case gave no notice whatever that he was about to pass the parked cars nor does it appear that he observed any other law or regulation of the road.

In primitive society the law or courtesy of the road was of little consequence. The cave man knew it not, neither was it a necessary part of the learning of Robinson Crusoe on his fabled island (Juan Fernandez). Even our fathers thought little of it when the stage moved only once a week from Washington to New York and once per month from Washington to Boston, but our day with the good road, the motor car, the railroad, and other devices for transporting persons and property and both moving hither and yon in every direction at all times of the day and night the law of the road has assumed a place of unusual importance in our legal code.

The year preceding this records 33,000 deaths, one half-million accidents, over one million injuries and the loss of other millions in property to the credit of the heedless incautious driver. This is a tremendous toll most of which could have been avoided by the exercise of courtesy and the observance of the law of the road on the part of the individual driver. Too often those who are circumspect in the observance of the amenities of polite society suddenly become obsessed by the rule of the survival of the fittest the minute they grasp a steering wheel. Respect for the law of the road and the exercise of courtesy are the only safeguards to motor traffic and will do more to protect it than all the traffic cops the roads can be policed by.

The law of the road is now embraced in statutes, ordinances, and regulations, is promulgated for the protection of life and property, it is an essential part of the common knowledge of every traveler and he who goes on the highway and negligently or otherwise fails to observe it does so at his peril.

For the reasons announced in this opinion the judgment below must be and is hereby reversed.

BUFORD, C.J., AND WHITFIELD AND BROWN, J.J., concur;

DAVIS, J., concurs specially.

ELLIS, J., dissents.

DAVIS, J., Concurring:—I concur in the judgment of reversal and in all of the opinion with the exception of that portion of the opinion which declares the bus driver to have been wholly free from negligence.

BROWN, J., (concurring):—Aside from the question as to whether or nor the driver of the bus was guilty of negligence, it is quite clear that the driver of the Dodge car, defendant in error's husband, was guilty of negligence which was either the proximate cause of his death or which contributed materially thereto, thereby barring any recovery by the defendant in error.

In Volumes 3-4 of Huddy's Cyclopedia of Automobile Law (9th ed, Sec. 130) it is said:

"The law of the road does not give the driver of a machine a license to pass a slower vehicle under all circumstances. He can do so only when reasonable prudence permits the passing. The driver of the overtaking car must have a thought, not only for the overtaken vehicle, but also for vehicles approaching from the opposite direction. He should not attempt to pass where he is unable to get back to his own proper position, so as to avoid a collision either with the approaching or with the overtaken vehicle. Although statutes or municipal ordinances may permit or require a faster vehicle to pass another on the left side thereof, the driver of the rear vehicle should not attempt this course when injury is likely to be thereby occasioned to a vehicle approaching from the opposite direction. Under such circumstances, it may be said that he is bound to exercise a "high degree of care", or the highest care, or extraordinary care, both for his safety and that of the approaching traveler. If a driver does attempt the passage without information of his intention to the traveler approaching from the other way, and such traveler is unable by an exercise of due diligence to avoid a collision, the former is liable for the injuries sustained by such traveler, for he should wait a suitable opportunity before attempting the passage.

"However the mere fact of a collision does not establish the negligence of the passing party. Much depends upon the condition of the highway and the surrounding circumstances, as well as the distance away of the third vehicle. The fact that the driver of the forward car is also guilty of negligence does not excuse the negligence of the rear car driver in passing.

"From the point of view of the traveler approaching from the opposite direction at the time a rear vehicle attempts to pass another going in the same direction, the passing conveyance is on the left or wrong side of the highway. In some jurisdictions the matter is specifically regulated by statute. Regulations may prohibit passage by the rear vehicle unless the way is clear for a specified distance ahead, such as one hundred yards, or two hundred yards. * * * * * *

"When an injury arises by coming into contact with an on-coming vehicle in passing or attempting to pass a vehicle in front, the questions as to negligence arising therefrom are generally for the jury."

While the foregoing quotation deals with the meeting of a second vehicle while passing a slower vehicle, the rules laid down applicable to such a situation might well be applied where an automobile driver was in the situation of the driver of the Dodge car in this case; that is, when he drives up behind two automobiles parked on the right hand side of the road while another motor vehicle is closely approaching from the opposite direction.

I am very much impressed with the very able opinion of MR. JUSTICE TERRELL, in which he takes the position that the weight of the evidence, and the legal effect thereof, shows that the bus driver was not guilty of negligence. The weight of the evidence shows that the bus driver was travelling at a very moderate rate of speed, twenty-eight to thirty miles per hour, well on the right hand side of the road, when approaching the situation presented by the evidence in this case, of two cars parked on his left and a third car coming up behind them from the opposite direction to which he was going. Even if, in abundance of caution he might have slackened his speed still further so as to prevent or minimize the danger of a collision if the car approaching from the opposite direction should negligently have attempted to pass the two parked cars at the same time that he was passing them, it might be said, in reply to this, that the bus driver, travelling as he was on the right hand side of the road, had the right to assume that the car approaching from the opposite direction would not be guilty of a negligent act, by attempting to pass the two parked cars while he, the bus driver, was passing on. Moreover, it appears from the evidence that this collision occurred on a highway, the paved portion of which was twenty feet wide, that the parked cars were partly off the

highway, on the East side, and the motor bus, when approaching and passing the parked cars, had swerved out to its right and was partly off the highway on the West side, its right hand wheels being about two feet beyond the edge of the pavement, thus leaving plenty of space between the two parked cars and the path the bus was travelling within which the Dodge car could have passed in safety if properly driven, without coming in contact with either the parked cars on its right or the bus on its left. The evidence tends strongly to show that the Dodge car was going rapidly and made too wide a turn, thus colliding with the bus. Under these circumstances, it seems to me that the proximate, moving and efficient cause of the collision was the negligence of the driver of the Dodge car; that even if the bus had been going only ten or fifteen miles per hour at the moment of impact, the collision would nevertheless have occurred, due to the negligence of the driver of the Dodge car.

In Seaboard Air Line Ry. Co. v. Watson, 94 Fla. 571, 113 So. 716, it was said:

"Although the plaintiff was not under the evidence chargeable with the contributory negligence of her husband, yet if he was negligent in driving the automobile upon the track in front of the approaching railroad cars, and this negligence on his part was the *sole proximate* cause of the collision and the resulting injury, plaintiff would have no right to recover against the defendant railway company.

"It is negligence which proximately causes or contributes to causing the injury or damage which creates legal liability. There may be concurrent causes of a single injury—concurrent negligence of two separate and distinct agencies—which, operating contemporaneously, together constitute the efficient proximate cause of the injury inflicted, and without either one of which the harm would not have been done. But if two distinct causes are successive and unrelated in their operations, they cannot be concurrent. One of them must be the proximate and the other the remote cause, and the law

will regard the proximate as the efficient and the responsible cause, disregarding the remote cause." Citing 22 R. C. L., 128. See also 22 R. C. L. 132-133.

I am inclined to think, therefore, that the preponderance and weight of the evidence, and its legal effect, showed that the sole proximate and moving cause of the collision and resulting tragic effect, was the negligence of the driver of the Dodge car, defendant in error's husband, and that the judgment should accordingly be reversed.

TERRELL, J., concurs.

ELLIS, J., dissenting:—I think the bus driver was not in the circumstances free from negligence. The injury due wholly to the carelessness of the bus driver, so the jury thought and the evidence was sufficient to justify that finding.