SERKOWSKI, Administrator, Respondent, vs. WOLF and others, Appellants.

*November 18—December 23, 1947.*

596

For the appellants there were briefs by *Wood, Warner, Tyrrell & Bruce* of Milwaukee, and oral argument by *Jackson M. Bruce.*

For the respondent there was a brief by *Gold & McCann,* attorneys, and *A. J. Palasz* of counsel, all of Milwaukee, and oral argument by *Mr. Palasz.*

FAIRCHILD, J. The jury found the motorcyclist negligent with respect to lookout. The question of the adequacy of the reflectors on the truck was fully presented at the trial and the jury had the conflicting testimony on that point before them when they determined the motorcyclist's negligence as to lookout. The street where the truck was parked was well lighted, and the streetcar motorman had been able to see the

parked truck when the streetcar was more than a block from it. The jury's finding of negligence with respect to lookout is therefore sustained by the evidence.

The jury found the motorcyclist was not negligent as to speed. We fail to find evidence to sustain that finding. The lawful rate of speed at the place of the accident is twenty-five miles per hour. When the motorcyclist regained consciousness as he was being taken to the hospital, he conversed briefly with the officer who was with him. This officer testified that the motorcyclist had said he was going thirty to thirty-five miles per hour. The streetcar motorman estimated that the motorcycle was going about thirty-five miles per hour. This estimate was based on the sound of the machine as it approached the streetcar. Respondent urges that the jury's failure to find the motorcyclist negligent with respect to speed is justified by the fact that the streetcar motorman first heard the motorcycle when the streetcar was about one hundred feet from the rear of the parked truck, and the motorcycle did not pass the streetcar until the streetcar was about thirty feet from the rear of the truck. The streetcar was traveling fifteen miles per hour or less at that time. It is suggested that if the motorcycle were going at an unlawful speed it would have passed the streetcar sooner. However, we find no evidence in the record to show how far behind the streetcar the motorcycle was at the time the streetcar motorman first heard it. Without that evidence it cannot be said that reasonable speed of the motorcycle is shown by the fact that the streetcar traveled about seventy feet between the time the motorman first heard the motorcycle and the time when the motorcycle passed the streetcar. The other evidence in the record indicates that the motorcyclist was traveling at an unlawful rate of speed.

The appellants were found negligent only with respect to the distance the truck was parked from the curb, and they contend that the evidence does not sustain the jury's findings of causal negligence on that issue.

The rules of the road require that vehicles be parked so that the right wheels are within twelve inches of the curb or edge of the street. Sec. 85.19 (2) (a), Stats. 1945. There is testimony in the record by two police officers who visited the scene of the collision in the exercise of their duty to investigate accidents. They arrived at the scene a few minutes after the accident, before the truck or the motorcyclist were moved. One of these officers, Joseph Meyer, testified as follows:

"*Q.* Will you tell us, Officer, how far the wheels, the right wheels, of the truck were from the north curb of Greenfield avenue? *A.* Approximately seven to eight inches from the curb, south of the north curb."

The other officer, Fred Auer, testified:

"*Q.* Now, will you state, Officer, whether or not you checked particularly to see how far the truck was from the curb or how near the truck was to the curb? *A.* I did.

*Q.* And what did you find in that connection? *A.* Approximately six inches—six to eight inches.

*Q.* When you say 'six to eight inches,' what part of the truck are you referring to? *A.* To the right rear wheel, the outer right rear wheel."

The driver of the parked truck, Henry Hiller, and two other truck drivers, John Billington and Lee James O'Hara, were at the root-beer stand on the south side of West Greenfield avenue at the time of the collision. Upon hearing the crash, they went to see what had happened. At the trial each of them testified as to where the truck was parked. Their testimony is as follows.

Henry Hiller:

"*Q.* How far would you say the right wheels of your truck were from the curb that day? *A.* Well, I wouldn't know.

*Q.* Well, can you give us approximately how far? You said before, up to the curb. What do you mean by that? *A.* Well, I would say within three, four inches, maybe five inches."

John Billington:

"*Q*. Now, did you take a look at the—where the truck was parked that night while you were there? *A*. I did.

*Q*. Tell the jury what you saw. How far was the truck from— *A*. Well, I didn't measure or nothing like that. I'd say, you know, if I was to estimate, about five to seven inches.

*Q*. Did you take a good look? *A*. I took a good look.

*Q*. And was the truck parallel with the curb, parked east and west? *A*. That is right."

Lee James O'Hara:

"*Q*. At any time before you left the place did you take a look at where the truck was parked? *A*. I did.

*Q*. And what did you do; how did you— *A*. Well, I walked around the truck and put my foot in between the gutter and the outside tire of the right rear wheel.

*Q*. And what—how far was the tire from the gutter when you did that? *A*. It was about an inch between my foot and the tire, and my foot was tight up against the curb.

*Q*. Did you put your foot parallel with the curb? *A*. That is right.

*Q*. So that the toe of your foot was facing west and the heel east? *A*. That is right.

*Q*. Which foot was that? *A*. My left foot. I was facing the front of the truck.

*Q*. Have you got any idea how wide your shoes are? *A*. About four inches, I guess.

*Q*. Have you got the same kind of shoes on now? *A*. No. I had working shoes on at that time.

*Q*. Were they a little wider than what you have on now? *A*. Regular working shoes. . . .

(The shoes he was wearing were measured and found to be four inches in width.)

*Q*. How much wider would you estimate those working shoes? *A*. Oh, maybe a half inch."

Respondent tries to minimize the effect of O'Hara's testimony by pointing out that O'Hara also testified that the point where the motorcyclist was lying was on the north rail and five feet from the left end of the truck. But an examination

of the record reveals that O'Hara was then speaking in terms of distances in an east-west direction, not of distances in a north-south direction.

The only testimony in the record tending to show that the truck was illegally parked is that of Charles Kosta, who arrived at the scene of the accident shortly after the officers did. His testimony was:

"*Q.* Did you notice, Mr. Kosta, how far from the north curb line of West Greenfield avenue the right side of that truck was? *A.* Yes.

*Q.* How far? *A.* I would say about two and a half feet anyway from the north—from the curb line.

*Q.* You gave a two and a half-foot distance, did you? *A.* That is right.

*Q.* What part of the truck do you make that applicable to? *A.* The whole truck."

Mr. Kosta also testified that he did not observe the truck closely enough to know whether there was any overhang of the box of the truck beyond the wheels. He estimated the truck to be six feet in width when without question it was 7.5 feet wide.

The rule for judging testimony of distances is expressed in *Wanta v. Milwaukee E. R. & L. Co.* (1912) 148 Wis. 295, 298, 134 N. W. 133, as follows:

"This court has often held that the testimony of disinterested and unimpeached witnesses on subjects like measurements and distances, and which is based on memory or casual observation and is at best only an estimate, must yield to that which is based on actual measurement."

The case at bar is one where no measurements with a ruler were made and with the exception of O'Hara's measurement in that respect this case is not within the letter of the rule. In any event, this case is clearly within the rationale of that rule. We have on the one hand only the testimony of Kosta, who was just a casual observer. On the other hand is the testi-

mony of the two police officers who are trained in the rules of the road and the investigation of accidents and who were at the scene for the very purpose of gathering all the facts which would help to explain the cause of the collision. Substantially in agreement with their testimony is the testimony of the three truck drivers, one of whom, O'Hara, made a type of actual measurement with his foot. All of these witnesses spoke specifically of the distance between the right rear tire and the curb. The whole of Kosta's testimony shows much less particularity of observation. The finding of the jury was against the overwhelming preponderance of the evidence on the question of the distance at which the truck was parked from the curb. This is a case where testimony of estimates not based on a careful, but plainly on a very casual, observation must give way to the direct and positive evidence of witnesses who made a careful investigation and whose observations are sustained by a measurement that indicates sufficient accuracy as to the result. Accordingly it must be held that the fact of illegal parking has not been established and therefore as a matter of law that the truck was not negligently parked.

When it is determined that there was no illegal parking, the failure of the motorcyclist to exercise ordinary care as to lookout explains the only efficient cause of the collision. It is unnecessary to treat further with the question of the excessive speed at which the driver of the motorcycle may have been traveling.

*By the Court.*—Judgment reversed. Cause remanded with directions to change the answers of the verdict relating to defendants' negligence in accordance with this opinion, and to enter judgment dismissing the plaintiff's complaint.