SHANNON, Chief Judge
(concurring in part and dissenting in part).
I concur in the reasoning of the majority opinion as to the incorrectness of the jury verdict; however, I regret that I must dissent from the result reached by the majority. From the facts and evidence as set out in the majority opinion, and as elaborated upon hereafter, I feel that a verdict should have been directed for the defendants at the conclusion of all of the evidence. I therefore direct my attention to this sole issue.
Involved here is Sec. 317.47, Fla.Stat., F.S.A., which provides that the truck was required to have two headlights; and under Sec. 317.46, Fla.Stat., F.S.A., these lights should have been operating at the time of the accident. The plaintiff’s position in the trial court was that failing to have the lights required by statute, the defendant was prima facie guilty of negligence. Alessi v. Farkas, Fla.App.1960, 118 So.2d 658; Clark v. Sumner, Fla.1954, 72 So.2d 375.
There is another provision of the statutes that comes into play, and that is Sec. 317.-25, Fla.Stat., F.S.A., the pertinent portions of which are set out in the majority opin *725 ion. The reversal by this court of the grant of a directed verdict in favor of defendant in the first appearance here of the instant case was grounded primarily upon the statutory exception to the requirement that motor vehicles shall be driven on the right half of the roadway. In our consideration of the case at the time, however, defendant had introduced no evidence, since the verdict was directed at the conclusion of plaintiff’s case.
While there is some testimony to the effect that the construction material was two or three feet on the roadway, the pictures of the scene of the accident taken immediately thereafter show no such material to have been scattered on the roadway itself, and there was no showing in the record that the right half of the roadway was closed to traffic. Even so, if it is assumed arguendo that the road building material was on the plaintiff’s side of the road, she, upon meeting the defendant’s truck, was under the duty to yield to the truck its side of the highway. This rule is set forth in 3 Fla. Jur., Automobiles, Sec.. 142, as follows:
“A motorist driving on his side of the road has the right to assume the person in charge of a vehicle coming from the opposite direction will observe the rules of the road and exercise care to avoid an accident, and to act upon this assumption even though such other ■vehicle may be in the center of the roadway on the wrong side of the road, and it has been stated that when ■collisions occur between vehicles a presumption of negligence arises against the driver who was on the wrong side of the road at the time of the collision.
* * *«
The rule was stated and applied in Car & General Ins. Corporation v. Keal Driveway Co., 5 Cir., 1943, 132 F.2d 834; Zorn v. Britton, 1935, 120 Fla. 304, 162 So. 879; Dania Lumber & Supply Co. v. Senter, 1933, 113 Fla. 332, 152 So. 2; and Florida Motor Lines v. Ward, 1931, 102 Fla. 1105, 137 So. 163.
As to the actual collision, when the plaintiff put on her evidence, one or two witnesses gave estimates as to the width of the road as being about 15 or 16 feet. When the defendants put on their evidence a state highway patrolman testified that he had actually measured with a tape measure the various distances. In addition, there was introduced a photograph taken immediately after the accident showing him in the process of measuring. The trooper’s complete investigation insofar as the accident was concerned was completed within a few hours of its occurrence. According to his measurement, the road at the point of the accident was 26 feet wide. In so testifying, the patrolman had looked at his report to refresh his memory. He also testified, after refreshing his recollection from his report, that the point of impact was 8 feet 2 inches from the center line of the roadway in the right hand lane coming from Miami. This, of course, meant that the collision occurred on the defendant’s side of the road. All of the testimony is that the plaintiff struck the defendant’s truck in a portion which was designated as its “saddle tank.” Of primary concern at this point, however, is whether we should take the patrolman’s actual measurements, or allow a jury verdict to stand which is based in whole or in part on witnesses’ general estimates of distance.
No Florida cases are cited in this regard, but there is a wealth of authority from other jurisdictions to the effect that measured distance must be accepted in lieu of the general estimates of other witnesses. In 32 C.J.S. Evidence § 492, p. 150, it is stated:
“§ 492 Estimates

"In the absence of better evidence, the estimates of a witness are admitted in various connections.

“The court, in discharging its administrative function of securing for the jury the best evidence fairly available, may well, where accurate measurements, weights, or other applications of standards to phenomena are avail *726 able, reject the estimate of a witness in such matters. * * * ”
In 20 Am.Jur., Evidence, Sec. 802, the following statement appears:
“ * * * Testimony even of disinterested and unimpeached witnesses on subjects of measurement, distance, etc., based merely on memory, estimate, or casual observation, must yield to that which is based on actual measurement.”
See note in 66 A.L.R., p. 1542, and cases therein cited.
In the case of Russell v. Mississippi Central Railroad Company, 1960, 239 Miss. 741, 125 So.2d 283, the court said:
“ ‘The testimony even of disinterested and unimpeached witnesses on the subjects of measurements, distances and the like, which is based merely on memory, estimate or casual observation, must yield to that which is based on actual measurement[s].’ S. H. Kress & Co. v. Sharp, supra [156 Miss. 693, 126 So. [650] 651 [68 A.L.R. 167]].”
In addition to the authorities above cited, see also Illinois Central Railroad Company v. Underwood, 5 Cir., 1956, 235 F.2d 868; Johnson v. Agerbeck, 1956, 247 Minn. 432, 77 N.W.2d 539; Serkowski v. Wolf, 1947, 251 Wis. 595, 30 N.W.2d 223; Borrson v. Missouri-Kansas-Texas R. Co., 1943, 351 Mo. 229, 172 S.W.2d 835; Luettecke v. City of St. Louis, 1940, 346 Mo. 168, 140 S.W.2d 45; Jones v. Reading Co., D.C.Pa. 1942, 45 F.Supp. 566; Copelan v. Stanley Co. of America, 1941, 142 Pa.Super. 603, 17 A.2d 659; and Kessler v. Davis, 1922, 111 Kan. 515, 207 P. 799.
In the instant case the plaintiff’s witnesses who gave their general estimates of distance testified prior to the highway patrolman. Otherwise, their opinion would not properly have been received.
Summarizing the evidence then, it is seen that the plaintiff, who had been drinking beer in the afternoon prior to the accident, although there is no proof of drunkenness,, was proceeding on a highway which was-under repair. As the evidence shows, however, she did not have to detour or leave her own side of the road; yet the accident occurred on the defendant’s side of the road in a situation for which there is no-logical explanation.
It is my opinion that a verdict should have been directed for the defendants at the-conclusion of all of the evidence, and to this extent I dissent from the majority-opinion.