KOEPKE, Respondent, vs. CITY OF MILWAUKEE, Appellant.

*December 2 — December 17, 1901.*

*Municipal corporations: Injury from defective sidewalk: Pleading: View: Evidence: Court and jury: Instructions.*

1. In an action for personal injuries alleged to have been caused by a defective sidewalk, the allegation in the complaint as to negligence, "that said sidewalk was then and there insufficient, in this: that at the aforesaid place  .  .  .  the sidewalk had fallen about four inches below the level, and, snow and ice having carelessly and negligently been allowed to accumulate and remain in an uneven and dangerous manner at said place, the said sidewalk was then unsafe and dangerous," is *held* sufficient upon demurrer, although susceptible to a motion to make more definite and certain.

2. Refusal of the trial court to allow the jury to be taken to the place of the accident is *held* not to have been an abuse of discretion.

3. Testimony of the plaintiff as to the condition of the sidewalk where he was injured, being shown to rest entirely upon a hearsay foundation, should have been stricken out upon motion, and the jury instructed to disregard it.

4. Testimony as to the condition of a sidewalk, based on a mere casual examination made in the darkness by two persons who went to the place to assist plaintiff and under circumstances of excitement naturally attending the accident and the summons for help, being opposed by the testimony of seven witnesses, including the assistant city engineer, as to examinations made and exact measure-

ments taken by them at a time when absolute certainty was possible, it is *held* that the court would have been justified in taking the question from the jury. *Bading v. Milwaukee E. R. & L. Co.* 105 Wis. 480, distinguished.

5. It is proper to instruct the jury that the testimony of witnesses who had made measurements, if otherwise credible, is of greater weight than the testimony of witnesses who merely made casual estimates.

6. A decline or slope in a sidewalk not exceeding three inches in four feet, with a lateral pitch of one fourth of an inch to the foot, in connection with an accumulation of snow, not unusual or extraordinary or so rough, lumpy, and uneven as to render the walk unsafe for pedestrians in the exercise of ordinary care, is *held*, as matter of law, not to constitute an actionable defect.

APPEAL from a judgment of the circuit court for Milwaukee county: EUGENE S. ELLIOTT, Circuit Judge. *Reversed.*

This action is to recover damages for injuries alleged to have been caused by the insufficiency or want of repair of a sidewalk in the city of Milwaukee. The accident happened on February 17, 1896. The negligence charged in the complaint is "that said sidewalk was then and there insufficient, in this: that at the aforesaid place on Cold Spring avenue the sidewalk had fallen about four inches below the level, and, snow and ice having carelessly and negligently been allowed to accumulate and remain in an uneven and dangerous manner at said place, the said sidewalk was then unsafe and dangerous." The case was tried in October, 1900. Defendant made objection to the sufficiency of the complaint, which was overruled. At the close of plaintiff's testimony a motion for a nonsuit was denied, as was also a motion to direct a verdict for defendant at the close of the testimony. Several requests to charge the jury were denied and excepted to.

A special verdict was taken, by which the jury found (1) that the plaintiff met with an accident at the time and place alleged; (2) that the sidewalk was "in such defective condition, by reason of its being depressed and the accumula-

tion of ice and snow in such depression, that a person passing
over it and using ordinary care would have been liable to
injury;" (3) that such condition had existed for such a
length of time that the city authorities ought to have known
of it; (4) that such condition was the proximate cause of
plaintiff's injury; (5) that plaintiff's damages were $1,016.66.
A motion to set aside the verdict and for a new trial was
denied, and judgment was entered for plaintiff. Defend-
ant appeals.

For the appellant there was a brief signed by *Carl Runge*,
city attorney, and *Joseph B. Doe*, special assistant city at-
torney, and oral argument by *Mr. Doe.*

For the respondent there was a brief by *Fiebing & Killilea*,
and oral argument by *H. J. Killilea.*

BARDEEN, J.   1. The defendant challenges the sufficiency
of the complaint.   The allegation regarding the alleged de-
fect in the sidewalk, set out in the statement, is quite indef-
inite.   It would have been susceptible to a motion to make
it more definite and certain.   There is enough, however,
stated to bring the pleading within the line of cases men-
tioned in *Doolittle v. Laycock*, 103 Wis. 334, and *Olson v.
Phœnix Mfg. Co.* 103 Wis. 337.

2. Plaintiff made a fair case for consideration by the jury
by testifying to facts concerning which he had no knowl-
edge.   He testified to the depth of the hole where he fell,
to the absence of stringers under the walk, and to the pres-
ence of snow and ice on the walk, but admitted that he knew
nothing about the actual fact except as he had been told.
A motion was made to strike out such testimony, but was
denied by the court.   Such ruling was plainly erroneous.
The facts mentioned were vital to the plaintiff's case.   Rest-
ing entirely upon a hearsay foundation, such testimony
should have been stricken out and the jury instructed to
disregard it.   The rule in that regard is so well understood,

and its application so plain, that the situation will not bear discussion.

3. Defendant complains because the court refused to allow the jury to be taken to view the premises.   This was a matter within the reasonable discretion of the court, and we think he exercised that discretion properly.   *Pick v. Rubicon H. Co.* 27 Wis. 433; *Boardman v. Westchester F. Ins. Co.* 54 Wis. 364; *Andrews v. Youmans,* 82 Wis. 81.

4. Another important question arises on the motion for a direction of a verdict.   It will be observed that the alleged insufficiency of the sidewalk consisted of a depression of about four inches, coupled with an accumulation of snow and ice.   In his description of the accident and the condition of the walk the plaintiff most effectually impeached himself.   He testified repeatedly that he stepped in a hole in the walk; that the hole was four inches deep; that the stringers to the walk were gone; that the boards were loose; and that the walk was partially covered with ice and snow. He admits, however, that he had never examined the spot; that the accident happened between 7 and 8 o'clock in the evening in the month of February; that it had been snowing a short time before; that it was very dark,— so dark that he could not see; that all he knew about the depth of the hole was what some one told him; and that he knew there was snow and ice on the walk because they told him so.   These circumstances indicate that no weight can be given to his testimony regarding the condition of the walk. The only corroboration he received is from two witnesses who went to the place of the accident and assisted him home.   They gave no testimony as to the care used in examining the place, or that they had any knowledge of its condition previously, except that one witness testified that there had been a depression in the walk some weeks or months before the accident.   It is undisputed that at the time they were with plaintiff it was so dark that they could

not see with any degree of distinctness. Whatever idea they had of the condition of the walk, as to the depth of the depression, or of the accumulation of snow and ice, was obtained without close examination, and while it was so dark they were unable to see distinctly. One of them testified that two of the planks had dropped two inches below the others, and that there were chunks of ice and snow on the walk, from an inch to an inch and a half high, caused by snow melting, and people walking over it while soft, and its subsequent freezing. This accumulation of snow and ice was in the center of the walk, and the melting and freezing had taken place two or three days before the accident. The other witness said he found a depression in the walk, with "lumps of ice as long as an inch, or thicker," and that all the sidewalk " was icy, somewhat, and lumpy, and it was covered with about half an inch of fresh snow all over," and that he did not examine it closely.

Six witnesses for the defendant examined the place the following morning, and another (the assistant city engineer) about a week afterwards and before any change had been made in the general features of the walk. The engineer made measurements, and caused a plat of the location to be made, which was introduced in evidence. It appears that some months before the accident a sewer or water trench had been dug from the street to the lot across the line of the sidewalk, and that, either by action of the water or insufficient filling, the ground beneath the walk had sunk, causing a depression in the walk below the level. According to the engineer's plat and the description by the witnesses, this depression was eight feet long, lengthwise of the walk. As one of the witnesses described it, "It commenced with nothing and ended with nothing." On the north side of the walk the lowest point was three inches, at the center two inches, and at the south side one and one-half inches; the descent from each end of the depression being gradual. The testimony of

these witnesses demonstrates almost conclusively that there
was no hole in the walk, that the stringers were not gone, that
the boards were not loose, and that the accumulation of ice
and snow near the center of the walk was insignificant in
quantity or height. They went to examine the place pur-
posely, and made a careful inspection of its condition.   Sev-
eral of them were wholly disinterested, and no circumstance
is suggested tending to impeach their testimony.   In view of
these circumstances, the finding of the jury was against the
overwhelming preponderance of the evidence as to the exist-
ence of an actionable defect. Considered by itself, the depres-
sion in the walk was not an actionable defect. The decline was
three quarters of an inch to the foot one way, with a lateral
pitch of one fourth of an inch to the foot.   The court would
have been amply justified in assuming that the walk was
reasonably safe for travel, so far as this particular defect is
concerned.   The accumulation of ice and snow was nothing
more than can be found on hundreds of walks in this state
during the winter months.   The rough or lumpy condition
was caused by people walking on the snow when soft, and
its freezing afterwards.   It constituted no obstruction to
travel.   What was said by this court in *Hyer v. Janesville*,
101 Wis. 371, indicates that such a condition of the walk will
not give rise to a cause of action if one slips and is injured.
We have said that the depression in the walk did not con-
stitute an actionable defect.   The ice and the snow was no
more than the usual accumulation incident to our climate.
Under these circumstances, the rule laid down in *Beaton v.
Milwaukee*, 97 Wis. 416, and followed in *De Pere v. Hibbard*,
104 Wis. 666, must be applied.   In the latter case this court
said:

" If there was no actionable defect on account of the in-
cline, the slippery condition resulting from ordinary accumu-
lations of ice in winter, when such accumulations are smooth,
does not constitute a defect."

The trial court felt restrained from granting the motion to direct a verdict by the decision in *Bading v. Milwaukee E. R. & L. Co.* 105 Wis. 480. A little reflection would have convinced him of the wide difference in the two cases. In that case there was a direct contradiction between witnesses as to a positive fact concerning which each had the same knowledge. The plaintiff's testimony was not weakened or shaken by the collateral circumstances, or rendered improbable by the situation. Here the plaintiff and his witnesses were testifying as to facts and conditions rendered improbable by the very circumstances admitted to exist. A mere casual examination made in the darkness, and under circumstances of excitement naturally attending the accident and the summons for help, cannot be allowed to prevail over careful examinations made and exact measurements taken at a time when absolute certainty was possible. Our conclusion is that the court would have been amply justified in taking the case from the jury.

5. The following requests to charge the jury were made by the defendant and refused by the court:

"If you find from the evidence that the depression in the sidewalk at the point where plaintiff fell consisted of a decline or slope from east to west and west to east of not to exceed three inches in four feet, and that no unusual or extraordinary accumulation of snow or ice had taken place there, or if you find that such snow or ice as existed at such place was practically level, and was not so lumpy, rough, and uneven as, in connection with said depression, to render the walk unsafe for travelers on foot, in the exercise of ordinary care, then I charge you that you should answer the fifth question in the negative."[1]

---

[1] The question here referred to is the fifth question proposed by the defendant for the special verdict, as follows: "5. At the place where the plaintiff fell and was injured, was there such an accumulation of snow and ice, in a rough, uneven, and lumpy condition, that, in connection with the condition of the sidewalk, such sidewalk was rendered [so] unsafe and out of repair that the defendant ought, in the exercise of ordinary care and prudence, to have foreseen that accidents were likely to occur by reason of such condition?" — REP.

"And I further charge you that, in determining where the clear preponderance of the credible evidence is, you are not to ignore or disregard the direct, positive evidence of witnesses who made measurements as to certain facts in dispute in this case, and, so disregarding such evidence, find the fact to be in accordance with the testimony of witnesses who, without making such measurements, merely estimate or give their judgment of the same, as the testimony of witnesses who have measured distances and made memoranda of such measurements at the time of taking, if otherwise credible, is of greater weight than the evidence of witnesses who merely give their recollection based upon estimates of such distances."

The first of these requests was directly applicable to the case as made by the defendant, and, if the court believed the case such as should have been submitted to the jury, it should have been given. It was fully warranted by the language of the decision in *De Pere v. Hibbard*, 104 Wis. 666. The second request was also proper, and should have been given. It was a correct legal proposition to say that the evidence of witnesses who had made measurements was of greater weight than evidence of witnesses who made casual estimates, if otherwise credible.

*By the Court.*— The judgment is reversed, and the cause is remanded for a new trial.