ALBERT IRVIN, *Appellee,* v. THE MISSOURI PACIFIC
RAILWAY COMPANY, *Appellant.*

No. 16,243.

### SYLLABUS BY THE COURT.

1. NEGLIGENCE — *Boarding or Alighting from a Moving Train.*
It is not negligence *per se* to get on or off a moving train;
but whether it is negligent or not is a question of fact and
proper for the determination of a jury.

2. RAILROADS—*Duty to Passengers—Obstacles upon Depot Plat-*
*forms.* It is the duty of a railroad company to keep its depot
platforms reasonably safe and free from obstacles by which
passengers are liable to be injured.

3. ———— *Express Truck Negligently Left Near Passing Train.*
It is negligence to leave an express truck upon an unlighted
depot platform after night and within five inches of a passing
passenger train.

4. ———— *Duty to Passengers—Negligence of a Third Party.* A
railroad company can not avoid its liability to passengers on
account of dangerous obstacles upon its depot platform on the
ground that such obstacles were placed thereon by an express
company which was permitted to occupy and use such plat-
form for its own purposes.

5. INSTRUCTIONS—*Misleading and Confusing—Proximate Cause.*
An instruction which was requested by the defendant and re-
fused by the court examined and held to have been properly
rejected.

6. ———— *Immaterial Error.* An instruction given by the court
examined and held not error.

Appeal from Rush district court; CHARLES E. LOB-
DELL, judge. Opinion filed February 12, 1910. Af-
firmed.

### STATEMENT.

This action was commenced in the district court of
Rush county by Albert Irvin to recover from the Mis-
souri Pacific Railway Company damages for a personal
injury received by the plaintiff at the station of Mc-
Cracken, on the defendant's railway in Rush county, on
account of the negligence of the defendant. The plain-

tiff lived at McCracken, and went to the station about the time the train arrived. When the train stopped a friend. of the plaintiff, Albert Smith, got off onto the platform. They met, and the plaintiff invited Smith to stay all night, saying he would drive him into the country, where he wanted to go, early in the morning. Smith declined, and asked the plaintiff to get on the train and go with him. While they were talking the call "all aboard" was given, the train started, and they both jumped upon the step at the rear end of the smoker—Smith first and the plaintiff after him. Smith stopped on the second step, and the plaintiff was for that reason compelled to stand on the first, or lower, step. One of his feet hung over about five inches, and as the train was passing struck an express truck and was injured. The platform at the station was not lighted. The facts in detail, as found by the jury, read:

"(1) Ques. What time did the defendant's train arrive at the station of McCracken on the evening of April 14, 1906? Ans. 10:15 P. M.

"(2) Q. How long did said train remain at said station of McCracken? A. Five to ten minutes.

"(3) Q. How many cars were there in said train? A. Five.

"(4) Q. Was said train a passenger train? A. Yes.

"(5) Q. About how many passengers, if any, got off said train at McCracken? A. Two.

"(6) Q. About how many persons other than the plaintiff got onto said train at McCracken? A. One or two.

"(7) Q. Did plaintiff attempt to get onto said train after it started to leave said station? A. Yes.

"(9) Q. What car did plaintiff attempt to get onto? A. Smoking car.

"(10) Q. If the plaintiff had boarded train immediately after all passengers who were destined for McCracken had alighted, would he have had ample time to have gotten into the car before said train started? A. Yes.

"(12) Q. When plaintiff stepped onto the first step of said passenger coach, how far was the express truck from him? A. About sixty feet.

"(13) Q. As said train passed by said express truck, what was the distance between the said train and the express truck? A. Five inches.

"(14) Q. Do you find that plaintiff stood with one foot on the lower step of said passenger coach, and permitted the other foot and leg to swing or protrude beyond the surface or side of said car? A. Yes.

"(16) Q. Was there anything to have prevented the plaintiff from placing both of his feet upon the lower step of said passenger car upon which he was riding at the time of the injury complained of? A. No.

"(18) Q. If plaintiff had placed both his feet upon the lower step of said car, would he have been struck by said express truck? A. Yes.

"(19) Q. What was there, if anything, to have prevented plaintiff from placing both of his feet upon the lower step of said car, standing erect, and thus preventing any part of his body from protruding beyond the surface, or side, of said car? A. A passenger.

"(20) Q. After said train stopped and discharged the passengers destined to McCracken, how long did plaintiff remain upon the station platform before he attempted to board said train? A. About five minutes.

"(21) Q. When plaintiff went to said station did he have any intention of becoming a passenger upon said train? A. No.

"(22) Q. Do you find that plaintiff, at any time, intended to become a passenger upon said train? A. Yes.

"(23) Q. If you answer the next preceding question 'Yes,' then state when, with reference to the time he got upon the step of said coach, he made up his mind to become a passenger upon said train. A. When he boarded the train.

"(24) Q. When plaintiff stepped upon the first step of said passenger coach, was there any person preceding him? A. Yes.

"(25) Q. If you answer the next preceding question 'Yes,' then state who said person was. A. Albert Smith.

"(26) Q. If you answer question No. 24 'Yes,' then state where said person was who was entering said coach ahead of plaintiff. A. Standing on second step of car.

"(27) Q. If you find that one Albert Smith was entering said coach ahead of plaintiff, then state if he is

the party with whom plaintiff was talking while said train remained at said station. A. Yes.

"(28) Q. Did plaintiff get onto the rear of said coach, or the front end thereof? A. Rear.

"(29) Q. What was the length of said passenger coach which plaintiff claims he attempted to board? A. About fifty feet.

"(30) Q. Was baggage and express car the next car in front of said car upon which plaintiff was riding? A. Yes.

"(31) Q. What was the length of said baggage and express car? A. About fifty feet.

"(32) Q. Was there a door in the center of the side of the said car used for the purpose of receiving and discharging baggage and express? A. There were two doors.

"(33) Q. Had said express truck by which plaintiff claims to have been struck been used to load express only into said baggage car before said train started from said station? A. Yes.

"(35) Q. Did said plaintiff know that said express truck was near the train at the time he stepped onto the lower step of said coach? A. No.

"(36) Q. Did one Albert Smith alight from said passenger train at the station of McCracken and engage in a conversation with plaintiff? A. Yes.

"(37) Q. Did said Albert Smith alight from said train at the station of McCracken for the purpose of terminating his journey or for the purpose of talking with plaintiff? A. For the purpose of seeing if any of his family was there.

"(38) Q. Did plaintiff know that Albert Smith would be a passenger upon said passenger train when he went to said station that night? A. No.

"(39) Q. How long had plaintiff been at said station before the arrival of the passenger train? A. About five minutes.

"(40) Q. As said train stood at the station of McCracken, what was the distance between the end of the car that plaintiff got on and said baggage truck? A. Between seventy-five and eighty feet."

*B. P. Waggener, W. P. Waggener,* and *S. I. Hale,* for the appellant.

*G. R. McKee,* for the appellee.

The opinion of the court was delivered by

GRAVES, J.: The defendant contends that the plain-tiff was guilty of contributory negligence, for the reason that he boarded a moving train. It is not necessarily negligent to get upon a moving passenger train; and, generally, whether it is negligent or not is a question for the jury. (*Railway Co. v. Holloway*, 71 Kan. 1; 3 Thomp. Com. Law of Neg., §§ 2995, 2996; *Distler v. Long Island R. R. Co.*, 151 N. Y. 424; *C. & A. R. R. Co. v. Gore*, 202 Ill. 188; *C. & A. R. R. Co. v. Winters*, 175 Ill. 293.) In this case the question of contributory neg-ligence was specially pleaded and relied upon as a de-fense. The general verdict finds in favor of the plain-tiff upon all the issues presented. It seems too late, therefore, to raise this question now. The parties are concluded by the verdict.

The plaintiff did not intend to take the train until it began to move, when he determined to go. There was no time then to buy a ticket. The necessity was pre-sented to get on the train immediately or forego the contemplated trip. He had the money with which to pay his fare, and he, in good faith, attempted to get upon the train as a passenger. He would have been in-side the car in a moment had he not been stopped by Smith, who stood upon the step next above where the plaintiff stood. He was in no way responsible for the obstacle presented by this other passenger. It has been the general practice of passengers in this state, when not prevented by the rules of the company, to board trains in this manner or any other manner which best suited their convenience, and this practice has been generally acquiesced in by railroad companies. No rules or regulations upon this subject were in force upon the defendant's road at the time the plaintiff was injured. Under the circumstances here shown we see no good reason for holding that the plaintiff was not a passenger.

It has been suggested that the truck upon which the plaintiff was injured belonged to the Pacific Express Company, and the court was requested to submit special questions to the jury which apparently were intended to establish that the express company not only owned the truck but also that it was used by that company upon that evening in delivering express matter to the train upon which the plaintiff was injured. We are unable to see the importance of this evidence, or of the fact if established. The defendant owned the station, the platform and the track, and was operating a passenger train as a common carrier. It thereby became charged with all the responsibilities and liabilities imposed by law upon a common carrier of passengers, and could not avoid the duties thus imposed by permitting a third person to transact business upon its platform and negligently place dangerous obstacles where they would be liable to injure passengers whom it was the duty of the defendant to protect from danger. This train passed in the nighttime; the platform was dark; the plaintiff was not aware of the presence of this truck. It is the duty of a railway company to keep its platform reasonably clear and free from obstacles by which passengers are liable to be injured. This truck was left in the darkness, within five inches of the passenger car, and within a few feet from where it had just been used in loading express matter upon the train. This was negligence, and it must be treated as the negligence of the railway company, regardless of who owned the truck or whose employee placed it in a position dangerous to people on the passenger train.

The district court refused to give an instruction to the jury requested by the defendant which reads:

"The jury is instructed that the plaintiff contends that by reason of the fact that Albert Smith stopped on the second step of said passenger car he was prevented from getting upon said platform, and was consequently injured. There is no claim that there was any connection between the act of said Smith in re-

maining upon said step and the position of said express truck, and, as one person is not liable for the injury done by another unless they act in concert, the defendant would not be liable in this case if the accident was the result of Smith's obstructing the plaintiff from getting upon said car."

It is difficult to say what specific legal proposition was intended to be presented by this instruction. The court might well have refused to give it because calculated to confuse and mislead the jury. It is not clear and specific, as all instructions should be. With doubt and hesitation we assume that the intention of the instruction was to have the jury advised as matter of law that the proximate cause of the injury was Smith, and not the express truck. The cases cited in support of the instruction, however, would justify the inference that the intention may have been to have the court say to the jury, in effect, that the case ought to have been brought against Smith instead of the defendant. But whatever may have been the intention, we are unable to say that the court erred in refusing to give the instruction to the jury.

Objection has been made to an instruction given by the court upon its own motion which reads:

"It is the duty of the persons in charge of a passenger train, in starting and stopping such train at a station, to look to the safety of passengers, and not to start or stop such train in such a manner as to result in the injury of a person in getting on or off thereof and using proper care for his own safety."

Under the evidence this instruction was not material. The injury of which the plaintiff complains was not caused by the mere manner in which the train was started, and the instruction might well have been omitted; but we are unable to perceive how the jury could have been misled or confused by it or how the rights of the defendant could have been materially prejudiced thereby, and we can not say that error sufficient to

justify a reversal was committed by the court in giving it.

We do not find any material error in the case, and the judgment of the district court is affirmed.