## Moore et al., Exrs., Appellants, *v.* Baltimore & Ohio Railroad Co.

Argued May 8, 1939.

Before
KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, RHODES and HIRT, JJ.

*Alexander C. Tener*, with him *Lester K. Wolf* and *Richard R. Winters*, for appellants.

*Charles J. Spinelli*, with him *John E. Evans, Sr.*, *P. Aurelio Geraci*, and *Margiotti, Pugliese, Evans & Buckley*, for appellee.

OPINION BY STADTFELD, J., June 28, 1939:

Appellant, Hubert Moore, instituted suit in trespass against the appellee company to recover for injuries suffered at the appellee's station at Connellsville, Pa., on November 21, 1937.

Appellant boarded appellee's train, the Fort Pitt Limited, at Pittsburgh, Pa., at about 9:17 o'clock on the morning of November 21, 1937, and occupied a seat in one of the day coaches. A light snow was falling when appellant boarded the train at Pittsburgh and the snow continued to fall and it was still snowing when the train arrived at the Connellsville station at about 10:40 a. m. A few minutes after the train arrived at the Connellsville station and after all passengers for Connellsville had alighted from the train and other passengers had boarded the train, appellant decided to pur-

chase a newspaper at the news stand which is located on the north side of the tracks. The day coach in which he was riding stopped directly opposite the news stand. He left his seat, went to the forward end of the car and proceeded down the steps onto the brick platform.

The Connellsville station of the appellee company stands on the north side of the tracks. Annexed to its eastern end is a news stand. A brick platform runs east and west in front of the news stand and parallel with the tracks. There are two tracks running into the station—an east-bound track and a west-bound track, the west-bound track being nearer the station. Between the west-bound track and the east-bound track there is a second brick platform. This platform is nine feet, eight inches wide. The appellee company maintains three plank cross-walks or crossings, which are spaced at intervals over the west-bound track, the middle plank cross-walk or crossing being located directly south of the station and the news stand.

The testimony on behalf of the appellant was that the platform upon which he alighted was covered with snow one-half inch in depth, and that between the point at which he alighted on the platform and the news stand, a smooth level plane of snow extended over the west-bound track to the news stand. He testified that he could see the rails of the west-bound track and the snow in the west-bound track which was an inch or an inch-and-a-half below the top of the rails; that the entire station platform was covered with a smooth plane of snow one-half inch in depth; that the plank cross-overs were covered with snow and were not visible; that, although appellant stated that some three or four passengers had gotten off the same day coach in which he was seated when the train arrived at the station, he did not see any marks, path or foot-prints along the platform indicating the proper course to be followed; and after taking three or four steps in the direction of

the news stand, he stepped into soft snow some fourteen or eighteen inches deep and fell, striking his left arm on the northerly rail of the west-bound track. He sustained a fracture and permanent limitation of motion to the extent of fifteen per cent.

On behalf of the appellee, the testimony was that twenty-five or forty passengers had alighted from the train at the Connellsville station, fifteen of whom had alighted from the same day coach in which appellant was seated and that five passengers boarded the train at the station. All the testimony on the part of the appellee was to the effect that the platform and plank cross-overs or crossings over the west-bound track were free of snow, and that there was snow in the bed of the west-bound tracks but that this snow was several inches below the rails and that one could easily see the edge of the platform as the snow was three or four inches below the platform edge, and a few inches below the top of the rails. It was also testified to in behalf of appellee that the west-bound tracks are two inches below the top of the platform.

The jury returned a verdict in favor of the appellant for $1,800. Appellee filed motions for judgment n. o. v. and for a new trial. Appellee's motion for judgment n. o. v. was granted in an opinion by SOFFEL, J., and judgment entered, from which this appeal is taken. Appellant, Hubert Moore, died shortly after this appeal was taken and the executors of his will were substituted as appellants.

On a motion for judgment non obstante veredicto, the testimony must be read in the light most advantageous to the plaintiff; he must be given the benefit of every fact and reasonable inference which may be deduced from the evidence: *Hawk et ux. v. Penna. R. R. Co.*, 307 Pa. 214, 218, 160 A. 862; *Kissinger et al. v. Pgh. Rwys. Co.*, 119 Pa. Superior Ct. 110, 180 A. 137.

The contention of appellant is that the appellee rail-

road company was negligent in not removing snow from its platform and cross-walks or crossings over the westbound track, appellant's theory being that by the appellee company's failure to remove the snow from its platform, he was unable to ascertain the edge thereof and, accordingly, the company permitted a dangerous place to exist, covered with snow. Appellant also contended that the cross-walks at the station were covered with snow and, consequently, appellant did not know of their existence.

This duty on the part of appellee depends on the circumstances. There is no absolute duty on the part of a railroad company to keep its platforms free from snow at all times. This is especially true where it has been snowing continuously for some time. That such a condition existed in the present case, is well established in the appellant's testimony which is as follows. On direct examination: "Q. Mr. Moore, on the ride from Pittsburgh to Connellsville, what was the state of the weather, if you observed? A. There was a heavy blanket of snow over the landscape and a light snow falling. Q. And did that condition continue from Pittsburgh clear to Connellsville? A. It did." And on cross-examination: "Q. When you got on the train at Pittsburgh, what were the weather conditions there,— was it snowing in Pittsburgh? A. There was a light snow falling. ...... Q. And you say, Mr. Moore, that snow continued falling until the time you arrived in Connellsville? A. Yes, a light snow."

In the case of *Wilson v. Reading Co.*, 95 Pa. Superior Ct. 570, 572, this court, through Judge KELLER (now President Judge) said: "Unless it was the duty of the railroad company to keep its station platform free and clear of snow during the snowstorm, it was not guilty of any negligence. We do not understand that the law has laid so heavy a burden on it. Within a reasonable time after the snow stops falling it must clear its station

platforms sufficiently to permit its passengers to arrive, get on and off the train, and leave the premises with due regard to their safety but to keep the platforms free and clear of snow in the midst of a snowstorm would be a practical impossibility, and the law does not require it."

Appellant's testimony, quoted above, indicates that it was snowing when he boarded the train at Pittsburgh and continued to snow until the train arrived at Connellsville. There was some countervailing testimony, however, that it was not snowing when the train arrived at Connellsville. If we assume that it was not snowing, the burden of proof was upon the appellant to prove how long before the train pulled into the station it had stopped snowing. As was stated in *Wilson v. Reading Co.*, supra, a railroad company has a reasonable time after it stops snowing in which to clear its station platforms. There was no evidence whatsoever in the record as to when it stopped snowing, and it cannot therefore be said that the appellee was negligent in not having the platforms clear of snow when the appellant's train stopped at Connellsville at 10:40 a. m.

Quoting from the opinion of TREXLER, P. J., in the case of *Chase v. City of Erie*, 102 Pa. Superior Ct. 288, 156 A. 630, at p. 290: "There was an entire absence of proof to show the existence of the condition complained of at any time prior to the accident and, of course, it was not shown that it had existed so long that the city by exercise of reasonable care should have discovered it. . . . . . There must be some actual proof as to the time the condition existed in order to impute knowledge to the city authorities. As above stated, the case is devoid of any testimony as to how long the condition had existed. This was a necessary element in the plaintiff's case. The lower court should have granted the motion for binding instructions." The duty of cities and that of railroad companies is analogous: *Wilson v. Reading Co.*, supra, at p. 573.

Appellant further contends that appellee's negligence did not consist merely in failing to remove the snow from the platform but that appellee could have made its premises safe in many different ways other than by removing the snow, as by placing "markers at the edge of the platform nearest the west-bound tracks to indicate the existence of the drop-off, or by having an employee present on the platform to direct plaintiff to the proper crossings, or to warn him of the deceptive condition, which really amounted to a trap; or by the not uncommon method of placing a sign or an arrow on the platform indicating the direction of the safe crossing." We are not aware of any cases which have imposed such duty on railroad companies immediately upon platforms becoming covered with snow. Appellee, however, contends that even if it be held that such duty arose, nevertheless the facts and testimony developed at the trial show that the physical situation at the Connellsville station on the morning of the accident, was such that there was no need for the precaution and warnings suggested by appellant. The appellant testified that the west-bound tracks extended one or one-and-a-half inches beyond or above the snow. There was no testimony that the tracks extended above the level of the platform itself. In fact, the uncontradicted evidence by a number of appellee's witnesses clearly indicated that the top edge of the tracks was several inches below the level of the platform curbing. Therefore, if, as appellant testified, the snow in the road bed was one or one-and-a-half inches below the top of the tracks and the tracks were at least one inch below the level of the platform, it follows that the level of the snow in the road bed was at least two inches below the level of the platform. With the physical conditions as they were, it was reasonable to expect that the passengers would follow the platform and not step off it. In addition, it was broad daylight and there was nothing to

obstruct appellant's vision. We are of the opinion that appellant failed to establish any negligence on the part of defendant company.

In addition, the facts and circumstances attending the accident clearly indicate a lack of proper care on the part of the appellant so as to prevent a recovery in this case. Appellant Moore, on cross-examination, gave the following testimony: "Q. Well, just describe the platform for me, please? A. Just a smooth plane of snow, with the shiny tracks of the west-bound tracks showing through the snow. Q. Well, Mr. Moore, didn't you see any, or were there any marks where the other passengers had walked? A. No. Q. Didn't you see a path, as it were? A. No. Q. But you say there were passengers that got off that train? A. Yes. Q. And you did not see any marks whatsoever? A. I did not see any. Q. Well, did you look,—did you look for those marks? A. Not particularly. Q. What did you do when you stepped off this car? A. I started over to the news stand. Q. You did not look to see whether there were any marks on the platform? Did you or did you not? I am not trying to cross you up, Mr. Moore. A. No, I did not look particularly to see if there were any footprints. Q. Then what did you do,—did you look directly at the station, and see that station, when you stepped off the platform, did you look at the station? A. I looked at the news stand. Q. And you walked directly across to the news stand? A. Yes. Q. You did not notice whether there were marks along that level plane of snow that you speak of, did you? A. No. Q. You just got off that train, and walked straight across to that station, is that correct? A. Yes." And upon being asked whether he looked down or looked very closely, answered that he "looked down as much as one ordinarily would and as closely as I ordinarily would look." It is impossible to conceive that a number of passengers, some three or four according to appellant's

own testimony, could step from a day coach and not make some footprints or marks or a path in freshly fallen snow one-half inch in depth. A court can draw but one conclusion from these facts and that is, that plaintiff failed to exercise the least degree of care for his own safety. Appellant had a duty to look and watch where he was walking. If he had looked and if appellant's story is true that there was a level plane of snow one-half inch in depth, he should have seen marks, footprints or a path along the platform and it was his duty to observe those footprints or path and to follow same, and in failing to do so he was guilty of contributory negligence. If there was no snow on the platform as the appellee contended in this case, he should have looked, and if he had looked, would have observed or seen the edge of the platform, the snow in the bed of the west-bound track several inches below the platform edge and the plank cross-overs or crossings over the west-bound track, and was under a duty to use these plank crossings which were maintained for passengers' use by the railroad company.

Quoting from the able opinion of the trial judge: "Our analysis of the evidence adduced at the trial convinces us that the plaintiff was negligent and that his negligence contributed to the happening of the accident which caused the injuries complained of. In crossing tracks that were clearly visible above the snow, the plaintiff had a right to anticipate that there might be depressions or rough places in the bed of the tracks. It is our opinion, giving the plaintiff the benefit of all the inferences possible, that he tested obvious danger."

We are entirely in accord with the conclusions reached by the court below that appellant failed to establish affirmatively negligence on the part of defendant company, and that he himself was clearly guilty of contributory negligence.

The assignment of error is overruled and judgment affirmed.