**LOWDEN et al. v. DENTON.**

**No. 11530.**

Circuit Court of Appeals, Eighth Circuit.

Feb. 28, 1940.

As Amended on Denial of Rehearing March 25, 1940.

Writ of Certiorari Denied June 3, 1940.

See 60 S.Ct. 1100, 84 L.Ed. ——.

Hale Houts, of Kansas City, Mo. (William S. Hogsett and Alvin C. Trippe, both

of Kansas City, Mo., on the brief), for appellants.

Thomas E. Deacy, of Kansas City, Mo. (Mitchel J. Henderson, of Kansas City, Mo., on the brief), for appellee.

Before GARDNER and WOODROUGH, Circuit Judges, and MOORE, District Judge.

GARDNER, Circuit Judge.

This was an action to recover damages for personal injuries received by appellee in a fall on an ice-covered passageway adjacent to the depot platform of the Chicago, Rock Island and Pacific Railway Company at Caldwell, Kansas. Appellants are trustees of the Chicago, Rock Island and Pacific Railway Company, and appellee, at the time in question, was a railway mail clerk. It will be convenient to refer to the parties as they were designated in the lower court. Plaintiff's complaint was in conventional form, and the defendants denied negligence, pleaded contributory negligence and assumption of risk.

Plaintiff received his injuries on the morning of February 19, 1938, as he was leaving the station platform at Caldwell, Kansas. He had left Caldwell the night of February 17, 1938, on his regular run to Fort Worth, Texas. At that time it was raining, and during his absence Caldwell experienced its worst storm of the winter. The rain very shortly turned into a freezing sleet and subsequently to snow and sleet. The snow and sleet froze and adhered to trees, poles and wires; some wires were down; the streets and sidewalks and all exposed surfaces were icy. The street next west of the station was too icy for safe transit of an ambulance. The storm, continuing through the day and night of the 18th, subsided about six a. m. the morning of the 19th. In order to keep the tracks and switches clear for the movement of trains and the station open, the railway company had to employ its full force of men and hire an extra man, who was all that was available. The entire available crew worked throughout the 18th and all that night, keeping the switches in the yards clear of ice and snow for the movement of the trains, and after the storm subsided, cleared ice and snow from a considerable portion of the station platform, and the men were still working clearing snow and ice from the south end of the station platform when plaintiff got off the train at 8:20 on the morning of the 19th. Plaintiff could see the men still working. Some were shoveling snow and ice off the platform, which was not yet completely cleared, and others were working on the switches, which had to be kept clear for the movement of trains due shortly. The temperature during the storm went down to about eight degrees above zero.

The railroad tracks pass through Caldwell in a northerly and southerly direction, and the station platform is on the westerly side of the tracks. Almost directly opposite the place where the mail car stops and on the west edge of the depot platform was located what was known in the evidence as the carmen's building. Caldwell was the division point for mail clerks and they and others connected with the railway service made use of this building. Plaintiff, following the cleared portion of the sidewalk, went over to and entered this building. He was carrying two suitcases, one containing material for the clerk on the next run, which he left at the building. While in the building he heard someone advise, "You had better take the path," but plaintiff did not know that the remark was addressed to him, or that the speaker referred to the cleared path formed by the railroad crew in the snow-cleaning efforts. There was a completely cleared space on the platform eight or nine feet in width next to the tracks and extending north to the end of the platform, where it connected with Central Avenue, a street running east and west and crossing the tracks. This cleared space extended also to the south to nearly the south end of the platform, where men were still at work clearing away the snow and ice. When plaintiff left the carmen's building, he passed to the north end of it, walking on the station platform. He then turned west to leave the platform and started out over a passageway or path which had not been cleared of ice or snow and which was a short cut to First Street, without testing the snow underfoot to see whether ice were underneath. Two steps from the cleared platform, he slipped and fell on the ice. He got to his feet, but fell again, and on the second fall fractured his right hip, which is the injury for which he seeks damages.

This pathway was used by the linemen and other railroad employees having oc-

casion to go to the rear of the carmen's building. It extended west along the south end of an enclosed park to the dead end of First Street, which intersects Arapahoe Street, the latter named street running northerly from the intersection along the westerly side of the station grounds. It was a cinder path, but at the time in question the surface was covered with snow and ice. The character, location and appearance of this path can better be understood by reference to the following photograph introduced in evidence by the plaintiff:

returned a verdict in favor of plaintiff, assessing his damages at $6,000, and from the judgment entered defendants prosecute this appeal.

It is among other things contended by defendants that there was no substantial evidence of negligence, and hence, the court erred in denying their motion for a directed verdict. In our view of the record, it will not be necessary to consider other contentions urged by defendants on this appeal. There is little or no dispute between the parties as to the law applicable.

The railway company had made some attempt to safeguard the pathway to a point beyond where plaintiff fell, by scattering salt down the passage to melt the snow and ice, but the weather was so cold that the ice when melted would freeze again within two hours, and no salt had been sprinkled there within that time of the accident. Cinders were not generally available, the main supply being frozen under.

Plaintiff presented his case on the theory that this pathway was a means of ingress and egress to and from the station grounds and that the railway company was negligent in not having cleared it of snow and ice at the time of the accident. At the close of all the testimony defendants moved for a directed verdict, which motion was denied, and the case was submitted to the jury on instructions to which defendants saved various exceptions. The jury

The railroad company owed the same duty to plaintiff that it owed passengers under similar circumstances. Scheipers v. Missouri Pacific R. Co., Mo.Sup., 298 S.W. 51; Louisville & N. R. Co. v. Dougherty, 170 Ky. 10, 185 S.W. 114, L. R.A.1916E, 464. It was not an insurer of his safety while he used defendants' platform and exits therefrom to the public street, but owed him the duty of exercising ordinary care in maintaining these facilities in reasonably safe condition. Cloud v. Kansas-Oklahoma Traction Co., 103 Kan. 249, 173 P. 338, 7 A.L.R. 1671; Tipton v. Topeka R. Co. 89 Kan. 451, 132 P. 189; Irvin v. Missouri Pacific R. Co., 81 Kan. 649, 106 P. 1063, 26 L.R.A.,N.S., 739. Whether there has been an exercise of such care depends upon all the facts and circumstances of the case.

As the court observed in its instructions: "There is no controversy here

but that at the time he was injured there had been one of the severest storms experienced by that particular locality and that it was attended with the fall of some rain which froze on the ground, of sleet and of snow." The railway company was, of course, not responsible for the wind, the rain, the sleet, the snow, nor the falling of the temperature. It was not therefore responsible originally for the condition which resulted from the action of the elements. Any negligence that can be attributed to it must be bottomed upon its failure to exercise ordinary care in clearing the platform exits and approaches after the falling and freezing of the rain, sleet and snow. As a public servant it was charged with the duty of keeping its track facilities in such condition as to enable its trains to move. The storm had prevailed for some twenty-four hours, and abated about six a. m. the morning of the accident. The storm affected all of defendants' maintenance duties, and the evidence is undisputed that it taxed all their facilities to the utmost. In order to keep the tracks and switches clear so that trains might move, and in order to keep the station open, defendants employed their full force of men and hired one extra man who was all that was available. A crew of six men worked all day the 18th and all that night and by morning had the tracks cleared and a path open on the platform next to the tracks out to Central Avenue and to the station entrance. Only about two hours and twenty minutes had elapsed between the cessation of a driving sleet and snow storm, with the temperature about eight degrees above zero, and the time of the accident. Some of the crew were still at work clearing snow and ice from the south end of the platform when plaintiff got off his mail car. So long as the snow storm prevailed, it would not seem to have been possible or feasible to clear the platform and approaches of snow and ice. This court has said that the duty of a railroad with respect to its platform and approaches is analogous to that of a municipality with respect to its public sidewalks, and that a municipality is charged with the duty of seeing "that the risks incident to passing over a slippery street or sidewalk are not increased by such obstructions as ruts or ridges, but it cannot be expected to remove all snow and ice from its sidewalks, or to guard against mere slipperiness which is due altogether to the

action of the elements." Clark v. Howard, 8 Cir., 88 F. 199, 202.

■■ Manifestly, defendants could not possibly have cleared every conceivable part of its platform, exits or approaches of snow and ice immediately, nor at the same time. The element of time is important. It appears from the undisputed evidence that defendants acted promptly and diligently with all available employees working throughout the storm, and that they had cleared off that part of the premises confessedly most generally used by the patrons of the railroad. It had not at that time, although it seems to have acted diligently, entirely removed the snow and ice from the south end of the station platform, and it had not yet reached the passageway or exit over which plaintiff chose to attempt to walk. Before they can be held liable for failure to perform this duty, it must appear that they had a reasonable time after the sleet and snow fell to remove it. City of Waco v. Diamond, Tex.Com.App., 65 S.W.2d 272; Koepke v. City of Milwaukee, 112 Wis. 475, 88 N.W. 238; Hyer v. City of Janesville, 101 Wis. 371, 77 N.W. 729; Steele v. City of Chippewa Falls, 217 Wis. 1, 258 N.W. 181; Williams v. City of New York, 214 N.Y. 259, 108 N.E. 448. Every part of the premises was not of equal importance. This passageway was a secondary one, not ordinarily used by passengers. The conditions here were unusual. An emergency existed which did not result from any acts of negligence of the defendants, and in the exercise of ordinary care they were warranted in determining which of the required tasks should first be performed. They were under no duty to divert the crew engaged in their main job of keeping the trains moving and of clearing as rapidly as they reasonably could the platform, in order to work on a back way cinder path.

In Kelly v. Manhattan R. Co., 112 N.Y. 443, 20 N.E. 383, 3 L.R.A. 74, which is a leading New York case on the subject, plaintiff was injured when he slipped and fell on icy steps leading up a covered stairway to the station. A severe storm which had been blowing had ceased approximately two hours before the accident. The court held that the railway company owed a greater duty to those it was carrying than it did to those who were entering or leaving its station premises, and that it

was not negligent in not having the steps sprinkled with sand or cinders at the time of the accident. See, also, Ponton v. United Electric Rys. Co., R.I., 200 A. 425, 117 A.L.R. 518; Moore v. Baltimore & O. R. Co., 132 Pa.Super. 182, 7 A.2d 162; Fitch v. Central R. Co., 74 N.J.L. 135, 64 A. 992.

■ There was no substantial evidence of negligence, and defendants' motion for a directed verdict should have been sustained.

■ It is now urged by defendants that we should direct the lower court to enter judgment for them on the merits, and in support of this contention they now sharply call to our attention Rule 50 (b) of the Rules of Civil Procedure for the District Courts of the United States, 28 U.S.C.A. following section 723c, reading as follows: "(b) Reservation of Decision on Motion. Whenever a motion for a directed verdict made at the close of all the evidence is denied or for any reason is not granted, the court is deemed to have submitted the action to the jury subject to a later determination of the legal questions raised by the motion. Within 10 days after the reception of a verdict, a party who has moved for a directed verdict may move to have the verdict and any judgment entered thereon set aside and to have judgment entered in accordance with his motion for a directed verdict * * *. If a verdict was returned the court may allow the judgment to stand or may reopen the judgment and either order a new trial or direct the entry of judgment as if the requested verdict had been directed. * * *"

Under this rule the trial court is now deemed to have submitted the action to the jury, subject to a later determination of the legal questions raised by the motion for a directed verdict. Hence, no express reservation is now necessary. Duncan v. Montgomery Ward & Co., 8 Cir., 108 F.2d 848; Massachusetts Protective Ass'n v. Mouber, 8 Cir., 110 F.2d 203. In this instant case, the defendants have meticulously complied with the provisions of this rule of court and hence, on the record now before us and under the circumstances disclosed thereby, are entitled on reversal to have the case remanded with directions to enter judgment for the defendants.

The judgment appealed from is therefore reversed and the cause remanded with directions to enter judgment for the defendants on the merits.